## SWIFT *against* STEVENS.

Though the holder of a negotiable promissory note, over-due, which is not produced at the trial, in an action against the maker, is not bound to prove its absolute destruction, yet he must give such proof as shews that the defendant cannot afterwards be compelled to pay the amount to a *bona fide* holder.

But direct and positive evidence on this subject is not required.

Therefore, where the plaintiff in an action against the maker of a promissory note, payable to bearer, proved, by the cashier of a bank, to whom the note had been confided for safe-keeping, that he had made diligent search for it, but was unable to find it; that he had never delivered it to any person; and that he had no doubt and verily believed, it had been, by accident, destroyed; it was held, that this was proper evidence to go to the jury to prove the destruction or non-existence of the note.

So where, on the trial of an action on such note, it appeared, that more than four years had elapsed from the time it fell due, and that there had been two former trials of the same action, without the production of the note; it was held, that these circumstances were entitled to great consideration on the question of its destruction.

On a motion for a new trial, not because the verdict is against evidence, but for a misdirection, remarks of the judge to the jury on the weight of evidence, constitute no ground for a new trial.

THIS was an action on a promissory note, for 500 dollars, dated the 31st of *December,* 1825, payable to *Thomas Swift,* the plaintiff, or bearer, on the 1st of *October* 1826. The count relied upon averred, that the note was lost and destroyed, by time and accident, or gone into the hands of the defendant; and therefore, it could not be produced on oyer.

The cause was tried at *Litchfield, February* term, 1831, before *Williams,* J.

On the trial, the plaintiff, to prove the destruction of the note, offered in evidence the deposition of *Lewis Forman,* cashier of the *Franklin Bank,* stating, that in the *Spring* of 1826, *William B. Hart,* who was then the principal director of said bank, delivered to the deponent for safe keeping, among other papers, two promissory notes, signed by *William Stevens,* [the defendant] payable to *Thomas Swift,* [the plaintiff,] or bearer, both dated the 31st of *December* 1825, one of which was for 100 dollars, and the other for 500 dollars; that afterwards, *viz.* between the months of *August* and *November* 1826, an application was made to him, by the defendant, for the note for 500 dollars; that the deponent thereupon made diligent search for it, but has never been able to find it; that he had

*Litchfield,*
*June, 1831.*

Swift
*v.*
Stevens.

never delivered it to any person ; and that he had no doubt and verily believed it had been, by accident, destroyed.    After the deposition had been read, the defendant moved, that all the evidence of the plaintiff might be excluded, as not proving, or tending to prove, that the note was destroyed, or not in existence. , This motion was overruled and the evidence admitted.

In committing the cause to the jury, the judge, among other remarks, said, that the notoriety of the controversy between the plaintiff and the defendant, and the fact that this cause had been tried twice before, were circumstances entitled to great weight in the consideration of the question as to the destruction of the note.

The jury returned a verdict for the plaintiff ; and the defendant moved for a new trial, for the admission of improper evidence and for a misdirection.

*J. W. Huntington* and *T. Smith,* in support of the motion, contended, 1. That when a note is lost, which is payable to bearer, or to order, and indorsed in blank, the owner cannot recover at law, without proving the *actual destruction* of the note.    If there be a defect of proof, his remedy is in equity ; and there payment will be ordered, on his giving an ample indemnity.    The rule proceeds on the idea, that the note may be in existence, and may get into the hands of a *bona fide* holder, who would have a right to enforce payment.

2. That the evidence of destruction must be direct and positive, or by circumstances totally irreconcilable with the existence of the note ; for if, notwithstanding circumstances, there be a possibility of the existence of the note, the owner must go into chancery. 2 *Stark. Ev.* 227.    *Pierson* v. *Hutchinson,* 2 *Campb.* 211. *Bevan* v. *Hill,* 2 *Campb.* 381. *Mayor* & al. v. *Johnson* & al. 3 *Campb.* 324.    *Poole* v. *Smith,* 1 *Holt's N. P. Rep.* 144. *Rowley* v. *Ball,* 3 *Cowen* 303.

3. That the jury were not authorized to infer from the testimony of *Forman* the *destruction* of the note.    He swore only to the *loss* of it ; and even in that point of view, the evidence was exceptionable.    No force or weight is added to his testimony, by his statement, that he had no doubt and verily believed, that the note had been by accident destroyed.

4. That the charge was incorrect.    How could the notoriety

of the controversy between the plaintiff and the defendant have any bearing on the question as to the destruction of this note? In the first place, the note may now be mislaid with other papers left at the *Franklin Bank.* If the cashier could not find it, on a search made in pursuance of a personal application, would a subsequent controversy between these parties, however notorious, draw it from concealment? Or secondly, it may be in the hands of a *mala fide* holder; and he would, of course, remain silent. Or thirdly, it may be in the hands of a *bona fide* holder, but the controversy, however notorious, may not have reached his ears; and if it has, he is not obliged to interfere. Can the plaintiff draw an inference prejudicial to the defendant, from the silence of a stranger, who has a right to remain silent? Let this rule be established, and a party seeking to recover on a lost note, may, at any time, strengthen his case, by making his controversy notorious. Fourthly, if notoriety is to have any effect, the parties respectively have a right to make it the subject of proof and disproof. What a strange enquiry would this introduce into courts of justice?

This is probably the first time, that it has been held, that the proof accumulates in proportion to the number of trials and the severity of the contest; so that what is insufficient on the first trial, ought to satisfy the jury on the third.

*Bacon,* contra, contended, 1. That the modern rule in *England,* requiring the holder of a promissory note, who is unable to produce it, in an action against the maker, to prove its destruction, is inapplicable and does not exist, in this country. The reason assigned for this rule, is, that the note may be in the possession of a *bona fide* holder; and the maker may be compelled to pay it a second time. Whenever the reason ceases, the rule of law founded on it must also cease. In *England,* bills of exchange and promissory notes constitute no inconsiderable portion of the *currency* of that great commercial nation. They are assimilated to bank bills, and, by recent decisions, have been placed upon the same footing. Here, the case is different. Bills of exchange and promissory notes have not been added to the immense paper currency, with which our country is inundated, by innumerable banks. Bank bills circulate as cash on the credit of the bank alone; and whoever receives them, in the usual course of business, is not required to look at the title of the person from whom he received

*(Margin note:* Litchfield, June, 1831. / Swift v. Stevens*)*

*Litchfield,*
June, 1831.

Swift
*v.*
Stevens

them. But promissory notes constitute no part of our currency. They do not circulate here as cash on the credit of the maker. The assignee must look to the title of the assignor. This distinction was recognized, by Lord *Mansfield*, in *Miller* v. *Race*, 1 *Burr*. 452. 457.; and the whole force of his reasoning rests upon the distinction which exists between bank notes, which are considered as cash, and promissory notes, which are not so considered.

2. That the circumstances of this case did not require the application of the rule ; the defendant being in no danger of being compelled to pay the note a second time. The note was dated the 31st of *December* 1825, payable the 1st of *October,* 1826 ; and was lost in the *Summer* or *Autumn* of 1826, and has not since been heard of. It has never been presented to the defendant for payment. The time which has elapsed since the note fell due, a period of about five years, together with the fact that it has not been heard of, during that period, are decisive evidence that it is not in the hands of a *bona fide* holder ; and to no other can the defendant be liable, even upon the principles of the *English* law. *Grant* v. *Vaughan,* 1 *Bla. Rep.* 485. S. C. 3 *Burr.* 1522.

3. That the plaintiff has remedy *at law.* The only reason assigned for requiring resort to a court of equity, is, that a bond of indemnity may there be ordered ; and it is supposed, that a court of law cannot judge of the sufficiency of an indemnity. Why not? In this state, the same individuals, who compose our courts of law, constitute, at the same time, our courts of equity, and have, in all cases, sole and exclusive equity jurisdiction. And why our judges, sitting as a court of law, should be stultified upon a practical question of daily occurrence, no one but a lawyer, trammelled with technics, can tell. In *Read* v. *Brookman,* 3 *Term Rep.* 156. Lord *Kenyon,* in reply to an intimation from counsel, that in the case of a lost deed, the party had his remedy in a court of equity, remarked, that " it is not a very pleasant thing for a court of law to say, that it cannot administer justice on legal titles, because it is fettered with certain forms." This reasoning applies with greater force to notes and bills than to deeds. The former more generally attend the person, and are more liable to be lost, than the latter. In *Walmsley,* v. *Child,* 1 *Ves.* 345. Lord *Hardwicke* said : " If the plaintiff could at law prove the contents of his bill, and the indorsement and the loss of it, he might have

brought his action at law upon the bill, without coming into *Litchfield,* this court." S. P. *Hart* v. *King,* 12 *Mod.* 310. per *Holt,* Ch. J. This was the unquestionable law of *England* down to the time of Lord *Hardwicke.* And this is the law of *Connecticut. Hinsdale* v. *Miles,* 5 *Conn. Rep.* 331. *Sill* v. *The Bank of the United States,* 5 *Conn. Rep.* 162. *The Eagle Bank* v. *Smith.* & al. 5 *Conn. Rep.* 71. 75.

*June, 1831.*

*Sw*
*v.*
*Stevens*

4. That *Forman's* deposition was relevant and proper evidence to prove both the loss and the destruction of the note. He is the person into whose hands it was last traced. He testifies, that the note was in his possession ; that he has never delivered it to any person ; that he has made diligent search for it, and has not been able to find it ; and that he has no doubt and verily believes, that by accident it has been destroyed. 1 *Stark. Ev.* 351, 2. *The King* v. *Castleton,* 6 *Term Rep.* 236. *Rex* v. *Johnson,* 7 *East* 65. *Kensington* v. *Inglis,* 8 *East* 273. *Livingston* v. *Rogers,* 1 *Caines' Ca.* in err. xxvii.

5. That the judge's remarks to the jury, in his charge, constituted no ground for a new trial. In the first place, the previous trials and the notoriety of the controversy, having a tendency to bring out the note, if it was in existence, afforded a fair presumption that it was destroyed. But secondly, *no point of law was decided,* by the judge, in the remarks under consideration. He merely called the attention of the jury to undisputed matters of fact, which appeared on the trial without objection. *Lyon* v. *Summers,* 7 *Conn. Rep.* 399. 408. " It is sufficient," says *Story,* J. in *Pennock* v. *Dialogue,* 2 *Pet. U. S. Rep.* 15. " that the court has given no erroneous direction."

WILLIAMS, J. The objection to the testimony appears to be to all the testimony offered by the plaintiff ; but no particular evidence is specified or objected to, except the deposition of *Forman.* Of course, the court cannot know precisely what other testimony was offered or admitted, or whether it was relevant or not. And it surely cannot be admissible for a party to object to a specified piece of evidence, reciting it, and then, under a general objection to all the evidence, ask the court to rule out all the testimony in the cause. The only question, therefore, to which the attention of this Court can be called, is, whether the deposition of the cashier of the *Franklin Bank* was evidence proper for the consideration of the jury.

The defendant has attempted to establish the proposition,

*Litchfield,*
June, 1831.

Swift
*v.*
Stevens

that the plaintiff must prove the note *destroyed ;* and that this evidence does not tend to prove that fact. The judge, in conformity to what, it was said, had been the charge, on a previous trial of this cause, informed the jury, that the plaintiff must prove that the note was destroyed. In this he went a little further, perhaps, than the rules of law will warrant ; but of this the defendant cannot complain. It is certain, that the plaintiff must prove something more than the *mere loss* of the note ; otherwise the defendant might be subjected to pay the note to-day, in the hands of *Swift,* and at a future time, he may be called on to pay the note in the hands of one claiming to be the *bona fide* owner. Nor is it a sufficient answer, that the note was over-due, when lost ; because the defendant ought not to be put to the expense of defending against these several claims and the hazard incident thereto. *Rowley* v. *Ball,* 3 *Cowen* 303. 312. *Long* & al. v. *Bailie,* 2 *Campb.* 214. n. The plaintiff is not bound to prove an absolute destruction of the property ; but " such proof must be given, by evidence of its destruction or otherwise, as shews, that the defendant cannot afterwards be compelled to pay the amount again to a *bona fide* holder." 2 *Stark. Ev.* 227. Thus, evidence of loss, coupled with the lapse of eighteen years, was held sufficient evidence of the non-existence of the note or bill. *Peabody* v. *Denton* & al. 2 *Gal.* 351. Was this deposition, then, evidence tending to prove the non-existence of the note ? It was claimed, on the part of the defendant, that it was entirely irrelevant ; and cases have been cited from *England* and *New-York,* to shew, that this question has been there decided by the courts. But since the decision of this court in *Coleman* v. *Wolcott,* 4 *Day,* 394. it must follow, that any evidence, which would be admitted, in *England,* to the court, to prove the loss or destruction of the note, must here go to the jury for the same purposes. By our practice, the plaintiff avers, that the defendant made the note ; that it is lost or destroyed ; and that it is unpaid ; and each of these facts is to be tried by the jury.

Does then, the evidence tend to prove, that the note was destroyed, or did not exist ? It was said, that the evidence in the deposition only tends to prove the loss, but not the destruction of the note. The defendant seemed to proceed upon the ground, that as the law carefully guarded the maker of the note from any injury arising from its loss, it would secure him fur-

*Litchfield,*
June, 1831.

Swift
*v.*
Stevens

ther, by requiring proof of its actual destruction ; and the argument went so far as to seem to exclude all evidence, except that of witnesses who saw it destroyed. This was not advanced in terms ; but I think it was so in effect. On this subject, the evidence must be of such a character as tends to prove the fact. In this case, it appeared, that the deponent had the special charge of this note. It was confided to his care. He swears, that he never delivered it to any one ; that he has searched for it, and cannot find it ; and to all this he adds, he has no doubt it is destroyed. How much stronger is this than the evidence in *Champion* v. *Terry,* 3 *Brod. & Bing.* 295. where the evidence was, that the bill was transmitted by mail, and did not reach its destination, and was seen no more ; but it was not shewn, that any enquiry had been made for it, or that it had been advertised. It is true, the court seemed to doubt whether this was sufficient proof of loss, although the evidence was admitted—perhaps, without objection. The court are now called upon to say, not that this deposition did not prove the destruction of this note, but that it did not *tend* to prove it ; not that it was not sufficient evidence, but that it was no evidence ;—that it was not of a character tending to prove the fact sought to be established, and ought not to have been submitted to the jury for that purpose. But unless we adopt it as a principle, that the destruction of such an instrument must be proved, by a witness who saw it, I cannot see any foundation for this argument. The counsel for the defendant might, indeed, before the jury, claim, that it should only satisfy them of the loss, but not of the destruction of the paper in question. This they doubtless fully availed themselves of. But to claim that it was not evidence for the consideration of the jury, is to claim that the court are to weigh the testimony, and if, in their opinion, it is not sufficient, are to withhold it from the jury. But upon subjects of this sort, direct and positive evidence is not to be expected. Circumstantial or presumptive evidence is the ordinary proof :—presumptive, as in *Peabody* v. *Denton* & al., cited above, where a note had not been heard of, for many years ;—circumstantial, as where a variety of facts concur to raise a fair inference as to the principal one. Thus, where it was proved, that a trunk of papers belonging to a person deceased, was kept by his widow, and was, with the house, destroyed by fire ; this was held sufficient to entitle a party to go into proof of the

contents of a certain letter of attorney to the deceased, although there was no direct evidence that it was in the trunk. *Jackson d. Livingston* v. *Neely,* 10 *Johns. Rep.* 374. Without expressing an opinion, therefore, as to the sufficiency of the testimony to prove the destruction of the note, I have no hesitation in saying, that if the testimony had not been admitted, it would have deprived the plaintiff of a privilege to which he was entitled in submitting the question of the existence of that paper to the jury, and would have laid a foundation for a new trial. In my opinion, therefore, the evidence was properly admitted.

It is also contended, that there must be a new trial, because the jury were informed, that the notoriety of the controversy and the fact that there had been two former trials of the same cause, were circumstances of great weight in the consideration of the case. It is to be presumed, that evidence of these facts was properly before the jury, as no objection is made on that ground.

But it is said, that they ought to have had no influence upon the case; or, at least, that undue importance was attached to them. Remarks of the court upon the weight of testimony are not often grounds for a new trial; for if the verdict is not against evidence, whether the court or jury gave more effect to a particular part of the evidence than it was entitled to, is seldom, if ever, a subject of enquiry.

But were it otherwise, I do not see any ground for a new trial. The question submitted to the jury was, whether the note was destroyed. The defendant claimed, that it was in existence, and he might be called upon, by another person. The plaintiff claimed to have proved, that it was destroyed. No positive evidence, however, of its destruction was presented to the jury; but the man, to whose care it was committed, swore, that he could not find it, and believed it to be destroyed. That four years had elapsed, and that the note had not appeared, were certainly circumstances strongly corroborative of the testimony of this witness. This testimony was satisfactory to prove, that the note was lost or destroyed.

Still, it is said, it proved no more than the loss. Now, if a paper is lost, by an exposure to the winds and weather, for four years or more, it may well be presumed to be destroyed; but if it is lost, by being misplaced, or by coming into the hands of another person, who might not pay much attention to it, the

fact that much time had elapsed, that a controversy was exist- <span style="float:right">*Litchfield,*</span>
ing respecting this paper, that a long litigation had been had, June, 1831.
would naturally excite the attention of any one in whose pos-
session the paper was ; and a regard to justice, or his own
interest or character, would naturally have led to its produc-
tion. It would hardly be believed, that any individual having
the paper in his possession, would, for four years, have entirely
overlooked it, or that knowing it was in his possession, so pro-
tracted a controversy should not have called it forth. If the
possessor claimed an interest in it, the controversy would lead
him to make his claim known. If he claimed no interest, a
sense of justice, and what was due to others, would, it may
be hoped, lead him to produce it, for the benefit of the true
owner.

In this point of view, it was thought, and still is, that the
notoriety of the controversy and the lapse of time were impor-
tant circumstances and entitled to much weight. The fact
that there had been two previous trials, was a fact strongly
calculated to make the controversy notorious and excite atten-
tion. Possibly too much weight may have been given to those
circumstances ; but that the attention of the jury was properly
called to them, I cannot doubt ; and as there is no claim that
the verdict is against evidence, there is, in my opinion, no
ground for a new trial.

Swift
*v.*
Stevens.

HOSMER, Ch. J. and DAGGETT and BISSELL, Js., were of the
same opinion.

PETERS, J., having received, during the argument of this case,
intelligence of the death of his son, *Hugh Peters* Esq. of *Cin-
cinnati*, left the court-house,—" *multa gemens, casuque animum
concussus*"—and gave no opinion.

New trial not to be granted.