# APPELLATE COURTS OF ILLINOIS.

### FIRST DISTRICT—MARCH TERM, 1882.

## FREDERICK EDLER
### v.
## JOHN D. UCHTMANN, Adm'r, etc.

1. INTEREST ON OPEN ACCOUNT.—By the statute of 1874, Chap. 74, § 4, the cases where parties might agree upon a rate of interest in excess of six per cent. were limited to written contracts. Hence an instruction to the jury that they may allow interest at ten per cent. upon an open account, if the parties so agree, is erroneous.

2. SUIT ON LOST NOTE—INDEMNITY BOND.—Where a promissory note has been lost, the owner may recover upon tendering to the maker a sufficient indemnity in some form against any future claim upon the lost instrument; or he must bring himself within some of the excepted cases where indemnity is not required.

3. WHEN INDEMNITY NOT REQUIRED.—Where the note is not payable to bearer, and has not been indorsed or has been indorsed specially; where it is clearly shown to have been destroyed; where it has been traced to the defendant's custody; and where it is shown that the defendant is protected by the statute of limitations against future liability, then, in such cases, a recovery may be had without tendering indemnity.

4. RECOVERY UNDER COMMON COUNTS.—Where it appears that the original account had become merged in notes, the plaintiff can not, by suing upon the original consideration under the common counts, escape the necessity of tendering an indemnity, or showing such a state of facts as will excuse him from giving indemnity.

5. VERDICT AGAINST EVIDENCE—WEIGHING EVIDENCE.—Juries must be

governed by the evidence as it is given, bringing to its consideration a candid and dispassionate judgment, and they are not at liberty to reject the testimony of any witness from mere caprice, nor upon any other ground which is not sufficient to satisfy a fair and candid mind when viewing the subject in the light of all the facts disclosed by the evidence.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.    Opinion filed March 7, 1882.

This was an action of assumpsit, brought by John D. Uchtmann, administrator of the estate of Bernhard William Uchtmann, deceased, against Frederick Edler, to recover for certain indebtedness claimed to have been due, and owing from the defendant to the plaintiff's intestate in his life-time. The declaration counts upon two promissory notes, executed by the defendant to said Uchtmann, one for $3,001.22, dated October 5, 1875, and the other for $850, dated July 3, 1876, both payable twelve months after date, with interest at the rate of ten per cent. per annum. The declaration also contains the common *indebitatus assumpsit* counts, alleging indebtedness from the defendant to said Uchtmann in his life-time. The cause was tried in the court below on a plea of *non assumpsit*, and a plea, duly verified, denying the execution of said two notes, and a verdict rendered for the plaintiff for $5,937.72, for which sum and costs the plaintiff had judgment.

The evidence shows that Uchtmann, at the time of his death, was about fifty-nine years old, and a bachelor. For many years he had made his home in the defendant's family, and during a considerable portion of that time, was in the defendant's employ as his book-keeper, at a salary of $300 a year and his board, the defendant then being engaged in the business of a lumber merchant in Chicago. In the year 1867, when said Uchtmann first entered the defendant's employ, he appears to have had several thousand dollars, which he loaned out to different parties, keeping the notes and securities therefor in his own possession at the defendant's house. The evidence shows that he was subject to occasional fits of mental weakness, amounting at times to partial insanity or imbecility, and in consequence of this infirmity he left the defendant's employ some

time in the year 1876, although he continued to remain an inmate of the defendant's family most of the time until his death, which took place on the 20th day of January, 1880.

After his death, his administrator took possession of his papers and effects, including his notes and securities against various parties, and among them were found two notes against the defendant, one for $250, dated February 5, 1876, and the other for $200, dated June 5, 1876, both payable twelve months after date, with interest at the rate of ten per cent. per annum. On the $250 note two payments of interest were indorsed, viz.: $25 October 13, 1877, and $25 May 9, 1878. These were all the notes against the defendant found among Uchtmann's effects, but on the defendant's ledger, in Uchtmann's handwriting, appeared an account between the defendant and Uchtmann, running from October 3, 1867, to July 3, 1876. This account was made up mainly of credits to Uchtmann for his annual salary and certain sums of money loaned by him to the defendant, together with interest each year on such credits. The account contained various memoranda, showing that the amount due Uchtmann was evidenced from time to time by the defendant's notes, and under date of October 5, 1875, the amount of Uchtmann's credits were footed up at $3,001.22, and opposite the footing appeared this memorandum: "A new note given." Also under date of July 3, 1876, was a footing showing $850 due Uchtmann, and a memorandum "New note."

It is not disputed that the two notes for $250 and $200, were due and owing from the defendant to Uchtmann at the time of Uchtmann's death, and they have since been paid to his administrator. The notes for $3,001.22 and $850, described in the plaintiff's declaration, were not produced at the trial, nor was any evidence given by the plaintiff tending to show what had become of them. No witness was offered by the plaintiff who had ever seen them or who was able to give evidence of their contents. The plaintiff, however, read in evidence from the defendant's books the account between Uchtmann and the defendant, showing the several items of credits to Uchtmann, together with the footings and memoranda above mentioned.

Edler v. Uchtmann.

Beyond this, the only evidence given by the plaintiff tending to show an indebtedness from defendant to Uchtmann was that of J. H. Fry, a witness who testified to a conversation between them in September, 1876, when some negotiation was going on as to the price Uchtmann should pay the defendant for his board.  During the conversation, Fry, who seems to have been speaking for Uchtmann, suggested three dollars, to which the defendant replied that he was satisfied with that when he got it; whereupon Uchtmann remarked " Don't you get it? you have money in your hands. "  At the same time the defendant paid Uchtmann the interest on two small notes, after which Uchtmann asked the defendant for more money.  The defendant inquiring what he wanted to do with it, Uchtmann said he wanted to put some in the bank, to which the defendant replied "Poh! poh! bank is nothing."

The defendant called as a witness his son, George A. Edler, who testified to a conversation with Uchtmann in relation to the matters of account between him and the defendant in the winter of 1876 or the spring of 1877.  In that conversation Uchtmann said he was going over to the old country.  Witness then asked him if he had settled up with the defendant, to which Uchtmann replied that he had, and had taken a couple of notes, one for a little over $3,000, and the other for a little over $800.  Witness asked him how long they had to run, and he said there was no time given, as he expected to go to the old country, and might need the money any moment.  The witness further testified that some time after this conversation he removed to Kirkland, Illinois, to take charge of a lumber yard belonging to the defendant; that in November or December, 1879, he came to Chicago, his principal errand being to look up a deed to the Kirkland property; that he went to the defendant's house, and on looking through a bureau drawer in which the defendant was accustomed to keep his deeds, insurance policies and other papers, he came across two promissory notes from the defendant to Uchtmann, one for $3,001.22, and the other for $850, both payable on demand, and having written across their face, in the handwriting of Uchtmann and over his signature, a statement that they were paid.  It appears that the witness made no

mention of this discovery to the defendant until several months afterward, and that the defendant then made search for the canceled notes, but failed to find them.

Frederick C. Edler, another of the defendant's sons, testified that a few weeks before Uchtmann died, Uchtmann invited witness into his room, and while he was there said to him: "Fred, couldn't you fix it so that your father would pay the little balance he is owing me yet—those two little notes?" Witness asked him if he needed the money, and he replied that he did; that he was going to the old country, and would like it settled up, it being so little. The same witness testified that in 1878, he took an account of stock for the defendant, and found that he had from $25,000 to $28,000 worth of lumber, including $7,000 or $8,000 in his yard at Kirkland and Fielding; that witness was afterward absent and returned on the 25th day of June, 1879, and found that the defendant had sold out nearly his entire stock; that he had then about $3,000 in bank, and had paid $3,000 on a mortgage, and that with the exception of the mortgage, he had no indebtedness except what he owed to Uchtmann.

The court, at the request of the plaintiff, gave to the jury the following instructions:

1. "For the plaintiff the court instructs the jury, that if they believe from the evidence that the defendant, Edler, made his note for $3,001.22, dated October 5, 1875, and payable to Bernhard William Uchtmann, deceased, and made his other note for $850, dated July 3, 1879, also payable to said deceased, and delivered said notes to said Uchtmann, deceased; that said notes became due before the suit was commenced, and have been lost and not transferred by the deceased, then they will find for the plaintiff for the full amount of said two notes above mentioned, together with such interest, if any, on such amount, if any, as the jury may, from the evidence, believe to be due from the terms of said notes, unless they further believe from the evidence that said notes have been paid, taken up, satisfied or extinguished. And in regard to this question of payment and satisfaction, the court further instructs the jury that payment or satisfaction is an affirmative defense, to

Edler v. Uchtmann.

be established by the defendant by a preponderance of the evidence. Hence, if the jury believe from the evidence that the defendant, Edler, was indebted to said Bernhard William Uchtmann, deceased, as aforesaid, then it devolves upon Edler, and the burden is upon him to show, by a preponderance of the evidence, that such indebtedness has been paid or satisfied.

" Therefore, if the jury believe from the evidence that the defendant, Edler, was indebted to said deceased as aforesaid, and that there is no preponderance of proof in favor of Edler on the question of payment or satisfaction, or that the proof in regard thereto is equally balanced, or that the preponderance of such proof is in favor of the plaintiff, then in each of these three cases and contingencies just mentioned, the jury will find that there was no payment or satisfaction.

2. " For the plaintiff the jury are further instructed that, even if they do not believe from the evidence that the notes sued on were ever made by Edler, and ever had any existence, yet if they do believe from the evidence that before and at the time of the death of Bernhard William Uchtmann, deceased, the defendant, Edler, remained and was indebted to him on open account, in the two separate sums of $3,001.22, and that said open account remained and was due and unpaid, and in no way satisfied or extinguished at or before the time of said death, and that Edler had agreed to pay interest on such indebtedness, if any, at the rate of ten per centum per annum, then in that case also, the jury will find a verdict for the plaintiff for such amount as they may, from the evidence, believe to be correct, computing and including such interest, if any, as the evidence may show to be due."

Messrs. ELDRIDGE & TOURTELLOTTE, for appellant; that the jury have no right to disregard the testimony of any unimpeached witness from mere caprice, cited Murray v. McLean, 57 Ill. 378; Smith v. Slocum, 62 Ill. 254; St. P. F. & M. Ins. Co. v. Johnson, 77 Ill. 598; Carney v. Tully, 74 Ill. 375.

A verdict will be set aside when it is clearly against the weight of evidence: Reynolds v. Lambert, 69 Ill. 495; Ill. Cent. R. R. Co. v. Chambers, 71 Ill. 519; T. W. & W. R. R.

Co. v. Moore, 77 Ill. 217; Baker v. Pritchett, 16 Ill. 66; Clement v. Bushway, 25 Ill. 200; Roger v. Kendall, 70 Ill. 95; Knott v. Skinner, 63 Ill. 239; Kuhn v. Griesbaum, 59 Ill. 48; Gordon v. Croaks, 11 Ill. 142.

The possession of the note by the maker, unexplained, is presumptive evidence that it is paid: Walker v. Douglass, 70 Ill. 445; 1 Greenl'f's Ev. § 38.

Mr. PHILLIP STEIN, for appellee; that the jury are judges of the evidence and the weight to be given to it, cited Smith v. Williams, 22 Ill. 357; Johnson v. Camp, 51 Ill. 219; Howitt v. Estelle, 92 Ill. 218; Lewis v. Lewis, 92 Ill. 237; Lowry v. Orr, 1 Gilm. 70; Duffield v. Cross, 13 Ill. 699; Bradley v. Geiselman, 22 Ill. 494; Graham v. Anderson, 42 Ill. 514; White v. Clayes, 32 Ill. 329; Dietrich v. Ramsay, 45 Ill. 209; Bunker v. Green, 48 Ill. 243; Robinson v. Parish, 62 Ill. 130; First National Bank v. Mansfield, 48 Ill. 497; Davis v. Hoeppner, 44 Ill. 306; Gill v. Crosby, 63 Ill. 190; Varner v. Varner, 69 Ill. 445; Stickle v. Otto, 86 Ill. 161; Hayes v. Houston, 86 Ill. 487; Lennon v. Goodspeed, 89 Ill. 440; Addems v. Suver, 89 Ill. 484.

The verdict will not be disturbed unless clearly against the weight of the evidence: Aurora Fire Ins. Co. v. Eddy, 55 Ill. 213; City of Peru v. French, 55 Ill. 317; Hope Ins. Co. v. Lonergan, 48 Ill. 50; Underhill v. Fake, 46 Ill. 50; Carrigan v. Hardy, 46 Ill. 502; French v. Lowry, 19 Ill. 158.

And not even then where the evidence is conflicting: Morgan v. Ryerson, 20 Ill. 343; Simons v. Waldron, 70 Ill. 281; Kightlinger v. Egan, 75 Ill. 141; Connelly v. The People, 81 Ill. 379.

BAILEY, J. By the second instruction given to the jury at the request of the plaintiff, the court below held that an agreement to pay interest at the rate of ten per cent. per annum upon an open account was legal and valid. This was clearly erroneous. Section 4, chapter 74, of the Revised Statutes of 1874, unlike the statute previously in force, limited the cases where parties might agree upon a rate of interest in excess of six per cent. per annum to *written contracts*.

Edler v. Uchtmann.

But the evidence tends very strongly to show that the indebtedness from the defendant to Uchtmann was put in two notes, one for $3001.22, dated October 5, 1875, and one for $850, dated July 3, 1876. This is proved by the memoranda on the defendant's books of account in Uchtmann's handwriting; by the admissions of Uchtmann to witness, George A. Edler, that he had settled his accounts with the defendant and taken two notes for about these amounts; and by the testimony of the same witness, that in November or December, 1879, he found in the defendant's possession two notes for those precise amounts, canceled in Uchtmann's handwriting. And upon this question there is no conflict in the evidence. No witness has testified that such notes were not given, and no fact or circumstance appears in evidence which even throws a doubt upon their execution. The mere fact that some four or five years later, after the payee was dead, his executor failed to find any such notes among his intestate's papers and effects, is manifestly insufficient to raise an inference that no such notes were given.

At the trial, both parties proceded upon the theory that notes for the amounts above stated were once in existence, and both gave evidence tending to prove that fact. Such being the state of the evidence, it is plain that the present appeal must be decided upon the assumption that, at the dates above mentioned, notes for the entire amount of the defendant's indebtedness on open account, were executed and delivered by him to Uchtmann. These notes not being produced, and plaintiff not having been able to find them, or to produce any evidence tending to show their whereabouts, or what has become of them, his recovery must be had, if at all, as upon lost notes.

Ordinarily, the maker of a negotiable instrument is entitled to its production and surrender on payment; but, as this is physically impossible where the instrument has been destroyed or lost, the owner is entitled to payment upon tendering a sufficient indemnity, in some form, against any further claim upon the lost instrument by a finder or holder. But there are some cases where the maker can run no risk of being compelled to pay the note a second time, and where consequently, the

owner may bring suit and recover without giving indemnity. These, under our statute, are, where the note is not payable to bearer and has not been indorsed, or has been indorsed specially; where it is clearly shown to have been destroyed; where it has been traced to the defendant's custody; and, where it is shown that the defendant is protected by the statute of limitations against future liability. 2 Daniel on Negotiable Instruments, § 1,480, *et seq*. See, also, Rogers v. Miller et al. 4 Scam. 333; McMillan v. Bethold et al. 35 Ill. 250. But, before the owner of a lost negotiable note can recover, either on the note itself, or on the original consideration of the note, he must either give the defendant indemnity, or prove the existence of some one of the foregoing exceptions.

No proof having been made of the contents of the notes in question, we must assume that the verdict was rendered upon their original consideration, under the common counts. But the liability to being compelled to pay the same indebtedness a second time was in no way changed by the mode of the recovery, and the plaintiff did not thereby escape the necessity of making such proof as would demonstrate the non-existence of such liability. There was no proof whatever that the notes had been destroyed, or that they were not indorsed by Uchtmann in his life-time, or even put in circulation by him, except the evidence of George A. Edler, who testified to having found them in the defendant's possession, canceled by Uchtmann, and if that evidence is to be believed, it established beyond controversy the defense of payment. The same evidence is all the proof there was tending to trace the notes into the defendant's hands, and clearly the statute of limitations has not yet become a protection to the defendant against future liability. It may also be remarked that the plaintiff gave no evidence of even the loss of the notes beyond the mere fact, that after Uchtmann's death, his administrator was unable to find them among his papers. Such being the State of the record, we are of the opinion that, upon the plaintiff's own evidence, the verdict can not be sustained.

In the light of what we have said, it is plain that the first instruction given to the jury at the plaintiff's request, did not

Edler v. Uchtmann.

state the law correctly. All it required in order to enable the plaintiff to recover on the notes in question as lost notes, was, proof that the notes had been lost, and that they had not been *transferred* by Uchtmann. They may not have been transferred, that is, actually negotiated or put in circulation by him, still if he, as payee, had indorsed them, or, using the language of the Supreme Court in McMillan v. Bethold et al. *supra*, if the notes "had been *adapted to circulation* by indorsement," he would not have been entitled to recover without first giving the defendant proper indemnity.

But we think the jury in finding against the defendant on the issue of payment, found against the manifest weight of the evidence. George A. Edler, as we have already stated, testified that, on looking through the defendant's papers some three or four years after the notes were given, he found the very notes now in suit in the defendant's possession, with the statement that they were paid in full, written across their face in Uchtmann's handwriting, and signed by him. Frederick C. Edler testified to a conversation with Uchtmann which took place from four to six weeks before his death, in which he desired the witness to get his father to pay the balance he then owed him, consisting of the two small notes, referring, it would seem, to the $250 and $200 notes about which there is no dispute. Evidence was also given showing the conversion by the defendant of nearly all his stock of lumber into cash at or about the time he claims to have paid the notes, thus showing him to have been in possession of the means for making such payment. This evidence was not disputed by any other evidence showing or tending to show a contrary state of facts, so that the verdict of the jury could have been reached only by entirely disregarding and rejecting the testimony of these two witnesses. There was no attempt by any direct means to impeach their testimony, nor are we able to perceive any material self-contradiction or any innate improbability in their statements. A justification of the jury in disbelieving them is sought to be found in the fact that they are the defendant's sons, and presumably biased in his favor; that in the course of their examination they displayed some degree of eagerness to testify favorably to him; and that on a

former trial of this case, neither of them was produced as a witness. We have examined the record with care so far as it bears upon these various matters, and fail to find anything from which the jury would be warranted in holding the testimony of these witnesses to be wholly untruthful. Had there been other witnesses disputing them, or swearing to an opposite state of facts, so as to submit to the jury a question of conflicting testimony, the case would have presented a different aspect. Juries must be governed by the evidence as it is given, bringing to its consideration, and to the determining of the facts which it tends to prove, a candid and dispassionate judgment; and they are not at liberty to reject the testimony of any witness from mere caprice, or because they may prefer the result which in that way becomes open to them, nor upon any other ground which is not sufficient to satisfy a fair and candid mind, when viewing the subject in the light of all the facts disclosed by the evidence, that the testimony of such witness is not entitled to belief.

For the reasons above stated, the judgment will be reversed and the cause remanded.

Judgment reversed.