LEHMAN MANUFACTURING COMPANY ET AL. *v.* JEWETT, RECEIVER, ET AL.

[No. 13,442.    Filed October 2, 1929.]

Norman E. Patrick and W. E. Cox, for appellants.
Roemler, Carter & Rust and Leo H. Fisher, for appellee.

McMahan, C. J.—This is an action by Charles W. Jewett, receiver of the Beech Grove State Bank, against the Lehman Manufacturing Company and others, seeking a recovery on certain first mortgage coupon bonds issued by the named defendant, for a foreclosure of the mortgage and asking that the mortgage be declared a first lien on all of the property described therein.

The facts were found specially, and, in substance, are as follows:   On September 30, 1920, the Lehman Manufacturing Company, hereafter referred to as "the mortgagor," or "old company," executed and issued 100 seven per cent interest coupon bonds numbered one to 100.   Each bond was for $500, payable to bearer, or to the registered holder, if the same were registered, October 1, 1930.   The interest was payable on April 1 and October 1 in each year, on surrender of the interest coupons, principal and interest being payable at the Troy State Bank, of Troy, hereafter referred to as "Troy bank" and "trustee."   These bonds were secured by a mortgage on the property of the mortgagor given to the Troy bank as trustee.   The mortgagor was given the option of redeeming any or all of the bonds October 1, 1923, or on any subsequent interest payment date.   The bank accepted the trust, and the several bonds with the interest coupons were thereafter sold and delivered to various parties.   Bonds numbered 21 to 40 were sold and delivered to the Farmers Bank of Newburg. Thereafter, and before September 9, 1921, the Beech

Grove Bank purchased said bonds 21 to 40 from the Newburg bank paying $10,000 therefor, and has ever since been the owner thereof. These bonds, 21 to 40, were not registered, and the first interest coupon on each was paid to the Newburg bank. No other interest coupons on said bonds were paid or presented for payment. September 9, 1921, the Beech Grove Bank was robbed, and each of said bonds and the coupons attached thereto were stolen and destroyed by the robbers by burning. Neither the mortgagor, the trustee, nor the Lehman Company of America knew or had any information as to what had become of said bonds or who claimed to own them until in December, 1924.

The Lehman Company of America, Incorporated, hereafter referred to as "the new company," was incorporated in July, 1922, and immediately thereafter the mortgagor sold and transferred all of its property to the new company. The officers and directors of the last-named corporation, at the time of this transfer, knew that said bonds numbered 21 to 40 had not been paid, and, as a part of the consideration for the sale and transfer of the mortgaged property, agreed to pay said bonds, and set apart 20 bonds of like denomination issued by it for the use of the owner of bonds 21 to 40.

The trustee, after accepting the said trust, caused the mortgage to be recorded, and, when the mortgaged property was transferred to the new company, the trustee knew of the terms and the arrangements of such transfer and knew said bonds, 21 to 40, and the interest coupons, had not been paid; and, in order that the property might be transferred free from the mortgage, at the request of the said two Lehman companies, released said mortgage from record as being paid and satisfied. No money has ever been delivered to the trustees to be used in paying said bonds 21 to 40.

December 6, 1924, the plaintiff, by letter, informed the trustee of the fact that the Beech Grove bank was the owner of said bonds 21 to 40, that the same had been stolen and destroyed, and demanded payment by said trustee of the interest coupons then due, which payment was refused. The Lehman Company of America has failed to keep on hand any money received for the transfer of the property from the mortgagor, has failed to cause any mortgage to be taken on its property to secure the payment of said bonds, and has failed to provide any money to pay any of the interest coupons on said bonds so owned by the Beech Grove bank. The bonds so owned by the Beech Grove bank are the only outstanding bonds of the mortgagor. Neither the Beech Grove bank nor the receiver thereof was consulted or knew anything about the transfer of said property or the release of said mortgage, and never assented to or ratified the same, all of which was done by the mortgagor and the trustee in violation of the trust, for the purpose of depriving the Beech Grove bank of its legal rights with reference to said bonds and avoiding the payment thereof.

The mortgage securing said bonds provided that in case of a default for 60 days in payment of interest, the trustee might, or, if requested in writing by holders of 20 per cent in interest of the outstanding bonds, *should* declare the principal of all bonds then outstanding due. In August, 1925, the receiver for the Beech Grove bank, in writing, informed the trustee that the Beech Grove bank was the owner of $10,000 of the outstanding bonds issued by the Lehman Manufacturing Company and of the interest coupons attached thereto, and that, on December 1, 1924, the receiver had made demand on the trustee for payment of the coupons then due and owned by the Beech Grove bank, which demand was refused, and that no part of such interest had been

paid, and, in writing, requested that the trustee declare all of said outstanding bonds due and payable. The trustee refused to pay said bonds or any part of the interest thereon, and also refused to declare the outstanding bonds due and payable. Immediately upon the sale and transfer of the mortgaged property to the new company, it executed to the First National Bank of Cannelton, as trustee, a mortgage upon the same property mortgaged to secure the payment of the bonds so held by the Beech Grove bank, the mortgage to the Cannelton bank being executed to secure $50,000 Class A bonds bearing six per cent interest, each of such bonds being due January 1, 1931. This mortgage, like the first one, contained a provision by which all of the bonds should be declared due for failure to pay interest coupons when due, upon written request of 20 per cent of the bond holders. The Cannelton bank gave no consideration for the mortgage issued to it, and, at the time, knew the bonds held by the Beech Grove bank and the interest thereon were unpaid. The new company sold a small part of the real estate covered by the mortgage for $300, has erected some new buildings, and is worth about $75,000 over and above all indebtedness. The original incorporators and stockholders of the new corporation were the same persons who were the directors in the Lehman Manufacturing Company when the property was transferred to the new company. The bonds issued by the mortgagor, and owned by the Beech Grove bank and secured by a mortgage, in express words made all the terms and conditions of the mortgage a part of each bond. Appellee contends these terms became a part of the bonds and rendered them non-negotiable, but, in view of the conclusion we have reached, these provisions are not material and consequently will not be set out.

The court concluded, as a matter of law, that the

bonds in question and the coupons thereto attached were not negotiable as inland bills of exchange; that they were owned by the Beech Grove bank, and, with the interest thereon, aggregating $15,895.72, were due and unpaid; that plaintiff should recover that sum from the Lehman Manufacturing Company, the Lehman Company of America, Incorporated, and the Troy State Bank, with costs; that the mortgage should be foreclosed, and that, if the mortgaged property did not sell for enough to pay the said amount and costs, the deficiency should be paid by the defendants in the following order: (a) By the Lehman Manufacturing Company; (b) if not paid by it, then by the Lehman Company of America, Incorporated; and (c) if not paid by either of them, by the Troy State Bank. From a decree in accordance with the conclusions of law, the three defendants last named appealed.

Appellants contend the court erred in overruling their demurrer to each paragraph of the complaint, in overruling their motions to suppress the deposition of Henry Schoenrock, that the findings are not sustained by sufficient evidence, and error in the conclusions of law.

The first and the last contentions present the same questions and will be considered together.

The deposition of Schoenrock was taken by written interrogatories, pursuant to §491 Burns 1926, being §318 of the Civil Code, which provides that the party desiring to take such a deposition shall serve notice of his intention, with a copy of the interrogatories to be propounded; that the opposite party may, within five days, file with the clerk such cross-interrogatories as he desires to propound; that the clerk shall then issue to some officer, by him selected, and authorized to take depositions, a commission, with interrogatories and cross-interrogatories and re-examining interrogatories, if any, annexed thereto, requiring such officer to cause

the witness to come before him at such time and place as he may appoint, and to faithfully take the deposition upon the questions annexed, and to make a return to the court of his doings. Appellants say this deposition should have been suppressed because it was not taken before an officer selected by the clerk, because the time and place for taking such deposition were fixed in advance by the plaintiff, and not by the officer taking the deposition; that the officer taking the deposition did not accurately write the answers of the witness to the interrogatories annexed to the commission, but rewrote the interrogatories and then wrote the answers of the witness to the rewritten interrogatories; and because it does not appear, either in the commission or in the certificate of the officer before whom the deposition was taken, that such officer was not of kin to either party, nor interested in the litigation.

Appellants did not file with the clerk any cross-interrogatories to be propounded, did not give plaintiff notice that they preferred to cross-examine the witness orally, and none of the parties was present when the deposition was taken.

Appellants, in support of the motion to suppress, filed the affidavit of the clerk of the court, in which he stated that when the interrogatories were filed, a notice for the taking of said deposition before a named person at a named place and day and a commission prepared in advance directed to such person were filed with the interrogatories, that he had nothing to do with selecting such officer or in fixing the time and place, but that he simply signed the commission which had already been prepared by the plaintiff.

There is no merit in this contention. The witness resided in Minnesota, and the notice, service of which was acknowledged by appellants' counsel, stated the deposition would be taken on a certain day

at a certain place in Minnesota, a copy of the proposed interrogatories being attached to such notice. Counsel for appellant waived the issuance of a commission and the authentication of the official character of the officer taking the deposition. Appellants make no claim that the person before whom the deposition was taken was not a fit and proper person to take the same, nor that they were in any manner harmed or prejudiced by the action of the clerk. The issuing of the commission was the act of the clerk, and, when he signed the commission which he says was prepared in advance, he adopted the same as his own. The officer before whom the deposition was taken certified that, after the witness was sworn, the officer propounded to the witness the interrogatories annexed to the commission in their order, and accurately wrote the answers of the witness, and then read the interrogatories and answers to the witness and corrected the answers as the witness desired, after which the witness signed the same; that neither party was present nor were the parties informed of the nature of the evidence until the deposition was finished. There is nothing in the certificate of the officer or in the record showing that the interrogatories contained in the deposition were not the original interrogatories attached to the deposition. Assuming, however, that they were not, and that the same were rewritten by the officer and then by him propounded to the witness, the overruling of the motion to suppress for that reason would not be reversible error.

The statute does not require that the officer taking the deposition shall certify that it was written by a disinterested person when it was written by the officer. It provides, among other things, that he shall certify "by whom the deposition was written; and if written by the deponent or some disinterested person, that it was written in the presence and under the direction of the officer." (§472 Burns 1926.) When the deposition

is written by a "disinterested person," the statute does not authorize the officer to certify that the person by whom it was written was in fact disinterested, and if, in such a case, the officer does so certify, his statement is not even *prima facie* evidence of the fact so stated. *Knickerbocker Ice Co.* v. *Gray* (1904), 165 Ind. 140, 72 N. E. 869, 6 Ann. Cas. 610.

Appellants next contend that the finding of the court is not sustained by sufficient evidence, and say there is no evidence to sustain the finding that, during the negotiations to sell and transfer the property to the new company, the mortgagor and the Troy State Bank failed and refused to communicate with the Newburg bank or the Beech Grove bank or the receiver, in any endeavor to obtain the consent and approval of the holders of the 20 bonds in controversy. The evidence, without conflict, shows that the mortgagor and trustee knew these bonds had been sold to the Newburg bank and that the trustee made no attempt to notify that bank of the transaction; that neither the trustee nor the mortgagor knew the Beech Grove bank had or claimed to have any interest in such bonds. If they had no knowledge upon this subject, the court might infer they gave the Beech Grove bank no notice. The trustee gave the Newburg bank no notice. The finding that the mortgagor gave neither of these banks any notice of the proposed transfer can be omitted from the finding without changing the result or affecting the conclusions, and consequently may be ignored.

The next contention is that there is no evidence to sustain the finding: "That at no time before the bringing of this suit did any of the defendants demand of the plaintiff proof that the Beech Grove State Bank was the owner of said bonds or the coupons; nor did they, or any of them, demand from the plaintiff indemnity or agree to pay any of said bonds or the cou-

pons thereon, if indemnity was given to the defendants or any of them." The evidence, without conflict, shows that, before the beginning of this suit, the mortgagor and the trustee were notified by letter by the plaintiff that the Beech Grove bank was the owner of the bonds and coupons, and payment of the same was demanded. Later, and before suit, the plaintiff again, by letter, notified the trustee of such ownership and requested that the trustee declare all of such bonds due. Both mortgagor and trustee ignored these letters and made no answer to either of them. The complaint contained no allegation concerning the facts set out in this finding, and no issue of that kind was presented by the answer of any of the defendants. The undisputed evidence shows that the Beech Grove bank was the owner of the bonds and coupons in question, and that when the bank was robbed, they were stolen by the robbers and by them destroyed by burning. Under such circumstances, the plaintiff was not required to furnish any indemnity before suit nor before being entitled to recover on the bonds as lost instruments.

The general rule is that the maker of a negotiable instrument is entitled to have the same produced and surrendered on payment. But, when the instrument has been lost, it cannot be produced and surrendered. In such cases, the owner is entitled to payment upon tendering sufficient indemnity against any further claim upon the lost instrument by a finder or holder. But there are cases where the maker can run no risk of being compelled to pay a note a second time, and where the owner may bring suit and recover without giving indemnity. One of the cases where the owner is not required to give indemnity is where the instrument is clearly shown to have been destroyed. In such a case, indemnity is not required in an action on a negotiable instrument. *Elder* v. *Uchtmann* (1882),

10 Ill. App. 488; *Moore* v. *Fall* (1856), 42 Me. 450, 66 Am. Dec. 297; *Des Arts* v. *Leggett* (1858), 16 N. Y. 582; *Scott* v. *Meeker* (1880), 20 Hun. (N. Y.) 161; *Moses* v. *Trice* (1871), 21 Grat. (Va.) 556, 8 Am. Rep. 669; *Rowley* v. *Ball* (1824), 3 Cow. (N. Y.) 303; *Swift* v. *Stevens* (1831), 8 Conn. 431; *Viles* v. *Moulton* (1839), 11 Vt. 470; *Aborn* v. *Bosworth* (1850), 1 R. I. 401; *Wofford* v. *Board of Police* (1870), 44 Miss. 579. And in *Torrey* v. *Foss* (1855), 40 Me. 74, it was held that the owner of a lost note might maintain an action at law without furnishing indemnity if it appear that the statute of limitations may be interposed to prevent a recovery by a *bona fide* holder.

The reason for the rule requiring indemnity is that where there is a risk it should be placed upon the party through whose negligence or misfortune the instrument was lost, and not on the maker. There should be no risk that the maker may be called upon to pay a second time. But, when the instrument has been destroyed and cannot be produced by any other person, there is no risk of having to pay it a second time.

The Supreme Court, in an action on a lost non-negotiable instrument, said: "The instrument not being negotiable as an inland bill of exchange, there can be no question, we think, as to the right of the payee to recover thereon without giving a bond to indemnify the bank against a claim which might be set up by some other person." *Nat. State Bank of Lafayette* v. *Ringel* (1875), 51 Ind. 393.

It was not necessary for the court in the instant case to make any finding on the question as to whether the defendants did or did not demand indemnity, nor whether they or any of them did or did not agree to pay if indemnity was furnished. The finding not being necessary to sustain an action, can be, and will

be, treated as surplusage. Whether it is sustained by the evidence is not material.

The next contention is that there is no evidence to sustain the findings that the bonds and coupons attached thereto were stolen by robbers and by them destroyed by burning, that plaintiff, by letter, made known to the trustee that the Beech Grove bank was the owner of the bonds, and that such bonds had been stolen and destroyed and payment demanded. There is ample evidence to sustain these findings.

Appellants also insist that the finding that the mortgagor transferred the mortgaged property to the new company, and that the release of the mortgage was for the purpose of depriving the Beech Grove bank of its legal rights, and of avoiding payment of the bonds so owned by said bank, is not sustained by the evidence. In support of this contention, appellants say the evidence affirmatively shows that the purpose of the transaction was to protect the best interest of all the creditors and bondholders, and that the failure to consult the Beech Grove bank was due to want of knowledge that the bank was or had been the owner or interested in said bonds. This is not an action to foreclose where a receiver has been appointed, who, thereafter, acting under the order of the court having jurisdiction of all the parties, executed a new mortgage to take up and pay the indebtedness secured by the old mortgage and in so doing released the old mortgage. Such cases as *Shaw* v. *Little Rock, etc., R. Co.* (1879), 100 U. S. 605, 25 L. Ed. 757, are not in point. The trustee in the instant case had no authority to release the mortgage until the mortgagor had complied with the terms of the mortgage unless the holders of the outstanding bonds agreed to such release. The owner and holder of bonds of the value of $10,000 did not consent to such release in the instant case. The fact, if it were the fact, that the

trustee believed it was acting for the best interest of all concerned, did not justify the trustee in releasing the mortgage. The fact that the mortgaged property was transferred to the new company, and that the mortgage was released for the purpose of depriving the Beech Grove bank of its legal right, is of no controlling influence. It is not material whether that finding is, or is not, sustained by the evidence. The court did not err in overruling the motion for a new trial.

Appellants say the demurrer to the complaint should have been sustained because there is no allegation that any indemnity had been given or offered to protect appellants from the risk of having to pay the bonds to a *bona fide* holder, and that the court erred in its conclusions of law for the same reason. We fully discussed the question when considering the sufficiency of the evidence to sustain the finding.

The Beech Grove bank was the owner of 20 per cent of the bonds issued. The interest not being paid, it was the duty of the trustee, after the 60-day notice, to declare all of the outstanding bonds due, and not having done so, the bondholder might, in a court of equity, prosecute an action on the bonds and have a foreclosure of the mortgage. The fact that neither the mortgagor nor the trustee had exercised its option to declare the bonds due did not bar the action of the receiver in the instant case. The court did not err in the conclusions of law nor in overruling the demurrer to the complaint.

Judgment affirmed.