### SALLIE E. REED

*v.*

### W. IRVING JENNINGS *et al.*

*Opinion filed April 16, 1902—Rehearing denied June 4, 1902.*

1. MORTGAGES—*when a party cannot be regarded as an innocent purchaser.* If a wife relies wholly upon representations of her husband that it would take but a certain sum of money to release a trust deed as to certain lots he desired her to purchase from him, the fact that the husband subsequently obtained a release does not entitle the wife to be regarded as an innocent purchaser, in a proceeding to cancel the release, where the release was not authorized by the terms of the trust deed, which was recorded, and was rescinded and the money tendered to the husband within an hour after execution, and before the husband had conveyed to his wife.

2. SAME—*mortgagee's lien not affected by arrangement between a mortgagor and his grantees.* The lien of a mortgagee cannot be discharged or affected by an agreement entered into between the mortgagor and one to whom he may dispose of his interest in the mortgaged premises; but the mortgagee may restrict or apportion his lien, in accordance with such agreement, if all interested parties consent.

3. SAME—*unauthorized release of trust deed—effect.* In equity, the release of a trust deed, if unauthorized by the terms of the trust deed or by the *cestui que trust,* will have no effect upon the deed of trust, as between the original parties or as to the subsequent purchasers with notice.

4. SAME—*effect of the trustee's possession of notes secured by trust deed.* The fact that a trustee in a deed of trust has possession of the notes secured, for the purpose of collecting them, does not confer authority to release the deed as to portions of the property, except in compliance with the terms of the instrument.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES A. BISHOP, Judge, presiding.

WALTER OLDS, for appellant.

PADDOCK & BILLINGS, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 15th day of July, 1892, one Hans A. Calland executed a trust deed in the nature of a mortgage to the Chicago Title and Trust Company as trustee, whereby he conveyed in trust, by way of mortgage, one hundred and forty-one lots to secure his notes in the sum of $32,500. The notes so secured were thirty-two in number, each being for the sum of $1000, except the last, which was for the sum of $1500. The notes were numbered consecutively, from 1 to 32. Numbers 1 to 8, inclusive, fell due in one year after date; 9 to 16, inclusive, fell due in two years; 17 to 24, inclusive, in three years, and 25 to 32, inclusive, in four years. The trust deed contained provisions authorizing the redemption and release of the lots separately, upon payment of specified sums. Under this clause Calland, the mortgagor, paid the sum of about $19,000 of the indebtedness, and notes representing that amount were canceled and sixty-four lots were released from the lien of the trust deed. Said Calland, the mortgagor, sold and conveyed a number of the remaining lots to M. H. Rundell, who assumed and agreed to pay notes Nos. 22 to 31, inclusive, each for $1000, being the total sum of $10,000, with interest thereon from July 15, 1895. Four other of the lots were sold to other of the defendants, each of whom assumed the payment of specified sums of indebtedness secured by the trust deed. On October 23, 1897, said Calland held title to thirty of the lots, upon which, should Rundell and the other prior pur-

chasers of the other lots pay the amounts assumed by them, respectively, to be paid upon the mortgage debt, it would be only necessary to pay $2700 and accrued interest to discharge them from the lien of the mortgage. Aside from the contracts of the subsequent purchasers a much larger sum would have been required to be paid to release the thirty lots from the mortgage or trust deed. Calland contracted to sell twenty-nine of said thirty lots to Hugh T. Reed, husband of the appellant, for the sum of $10,000. Reed assumed to pay $2450 of the said $2700, and conveyed to Calland other property in payment of the remainder of the purchase price of the twenty-nine lots. Calland afterwards paid the sum of $250 and the interest thereon, and secured the release of the only remaining lot to which he held title. This payment and release were in pursuance of the provisions of the trust deed authorizing the release of separate lots. Reed, on the 13th day of July, 1898, paid to said Chicago Title and Trust Company, the trustee in the said trust deed or mortgage, the said sum of $2450, and accrued interest thereon, and received a release deed purporting to discharge the twenty-nine lots which he purchased from Calland from the further lien of the trust deed. The sum thus paid by Reed was insufficient, following the provisions of the trust deed, to authorize the trustee to release his twenty-nine lots. Within perhaps an hour after the execution of this release deed to Reed the Chicago Title and Trust Company discovered the error, and claimed that the release was issued to Reed without compliance upon his part with the requirements of the deed of trust; that it was unauthorized by the holders of the notes secured by the deed of trust and was therefore without legal force, tendered to return the money he had paid and demanded that he should surrender up to it the release deed. Reed refused to comply with the demand, and on the following day, the 14th day of July, 1898, conveyed the lots to the appellant, his wife. The Chicago

Title and Trust Company on the same day filed a petition in chancery praying that the release deed be canceled and expunged from the records. Soon after, the appellees, the holders and owners of the notes secured by the trust deed to the Chicago Title and Trust Company, as trustee, filed a bill in chancery for the foreclosure of the trust deed and also for the cancellation of the deed of release. The two causes were consolidated, and upon a hearing a decree was rendered canceling the release on the return of the sum paid to the Chicago Title and Trust Company by said Hugh T. Reed, and also decreeing that all the lots, save the sixty-four theretofore released, as aforesaid, should be sold by the master in chancery for the purpose of discharging the amount declared by the decree to be due and unpaid upon the notes held by the appellees. The appellant prosecuted an appeal, but the decree was affirmed by the Appellate Court for the First District, and the record is before us upon a further appeal prosecuted on her behalf.

It is first contended the appellant, Mrs. Sallie E. Reed, should have been regarded by the chancellor as an innocent purchaser for value of the twenty-nine lots, and that she should have been protected as a *bona fide* purchaser against all efforts to cancel the deed of release and thereby subject her property to the lien of the mortgage.

The appellant, Mrs. Reed, had inherited some property from the estate of her father, who died in Indianapolis, Indiana. While she was at her brother's house in Indianapolis, soon after her father's death, in the month of July, 1898, and prior to the execution of the deed of release, her husband, in response to a letter written by her asking him to come to Indianapolis, answered that he could not come; that he had to secure some money to meet and discharge a mortgage, and in reply to which she wrote to him that if he would come to Indianapolis she thought she could provide him with the money. He went to Indianapolis, and it was agreed between them

that she should pay him the sum of $3850 (which she secured by the sale of a portion of her interest in her father's estate) for the twenty-nine lots in question. She was informed by him that the lots were subject to a mortgage, but he told her that there was only the sum of $2450, and some interest thereon, remaining to be paid to release the lots from the mortgage upon them, and that the lots would then be clear, except some amounts due for taxes and special assessments, and that out of the money received from her he would pay all liens of all kinds and convey the lots to her free and clear of any manner of encumbrances. She paid him the sum of $3850, and with the funds thus provided he returned to Chicago, procured the release to be executed by the Chicago Title and Trust Company and delivered to him, placed the same on record, executed a deed conveying the lots, through the medium of a trustee, to her, and had the deed placed of record for her, as he had agreed with her to do. The trust deed on the lots stood of record in the county of Cook, and the law charged the appellant, Mrs. Reed, with notice of the lien thereby created upon the lots, and with knowledge of all the terms and conditions of the trust deed. In addition to that, her husband carried to her actual knowledge that the lots were subject to a mortgage. She was not induced to part with her money by any act done or representation made by the trustee in the trust deed or by the holders of the notes secured thereby. She acted solely upon the faith of the representations made to her by her husband, and neither the appellees nor the trustee in the trust deed were responsible for his statements to her. True, her husband did succeed in inducing the trustee in the trust deed to execute a release upon payment of the amount he told her remained to be paid to discharge the lien of the trust deed; but this release was not issued until after she had parted with her money, and it could not in any way have induced her to act to her injury or prejudice. If the hus-

band had procured the release prior to going to Indianapolis, and had taken the release with him and exhibited it to her, and she had parted with her money on the faith of the release and without notice of lack of power in the trustee to make the release, a different question would have been presented. But her acts were not induced by the execution of the release, or by anything said or done by the holders of the notes or by the trustee. She acted relying upon the representations made by her husband, and her rights and position must depend upon the correctness of such representations.

It is clear the amounts that Rundell and two other purchasers of lots from Calland assumed and agreed to pay on the indebtedness secured by the trust deed, and the amount of $2450, and interest thereon, which the husband of the appellant assumed and agreed to pay, would equal the entire amount secured to be paid by the deed of trust. But these assumptions of portions of the mortgage indebtedness had no effect to discharge the lien of the mortgage upon all or any of the lots described in the mortgage or trust deed, by force merely of the agreements of assumption between these various purchasers and the mortgagor, Calland. The lien in favor of a mortgagee cannot be discharged or affected by an agreement entered into between the mortgagor and one to whom he may dispose of his interest in the mortgaged premises. In such a case the mortgagee might restrict or apportion the lien of his mortgage in accordance with such agreements of assumption, if all persons interested in the mortgaged property should consent. But after a careful examination of the evidence preserved in the record we are inclined to agree with the chancellor and the Appellate Court that the evidence did not prove the assumptions and agreements in question were or became anything more than agreements and contracts between the mortgagor and subsequent purchasers from him. It appeared in the proofs the appellees, holders of the notes

secured by the mortgage, were advised of the contracts of assumption entered into by and between the mortgagor and the subsequent purchasers of the mortgaged lots, and also that appellees were willing and anxious to receive the total amount due on the indebtedness secured by the trust deed, and encouraged the subsequent grantees to act together in making payment in full, according as they had, respectively, agreed with Calland. We agree with the trial and the Appellate Courts there was no sufficient proof any of them were induced to believe releases would be granted to any one except upon payment of the whole indebtedness or payment in full for specified lots, in accordance with the provisions of the deed of trust authorizing the release of separate lots. There is no proof of an express agreement or novation. Nor do we find in the proof any sufficient foundation for the position that Reed was induced to believe, or was justified in believing, either before he made his purchase from Calland or afterward, that the lien of the mortgage as to the twenty-nine lots purchased by him would be restricted or limited to the sum which would remain unpaid according to the assumptions of the prior purchasers of the lots from Calland. At all events, it cannot be demonstrated from the proof preserved in the record that the chancellor was clearly and manifestly in error in the finding upon this point, and that being true, we should accept this conclusion of the chancellor. Under the provisions of the trust deed a much larger sum would be required to effect the redemption of the twenty-nine lots conveyed to Reed than the amount he assumed with Calland to pay.

The Chicago Title and Trust Company, in executing the release of the mortgage or trust deed, was exercising the power possessed by a trustee under the trust deed. It was its duty, and, in the absence of authority from the holders of the notes secured by the trust deed, in any equitable view, the limit of its powers, to release

the lots upon payment in compliance with the terms and provisions of the trust deed.   The rule in equity has been thus stated in this jurisdiction:   The release of the lien of a trust deed by the trustee, if "unauthorized by the terms of the trust or by the *cestui que trust*, will have no effect upon the deed of trust, as between the original parties or as to subsequent purchasers with notice." (*Barbour* v. *Scottish-American Mortgage Co.* 102 Ill. 121; *Stiger* v. *Bent*, 111 id. 328; *Insurance Co.* v. *Eldridge*, 102 U. S. 545; *Williams* v. *Jackson*, 107 id. 478).   The fact the title and trust company had possession of the notes and had power to collect them did not increase its authority to release the lien of the trust deed.   Its authority in this respect was to receive money in payment of the notes. (1 Am. & Eng. Ency. of Law,—2d ed.—p. 1027).   Reed was charged by law with notice of the power of the trustee in that respect.   He knew the other subsequent purchasers had not paid the amounts they had assumed and agreed to pay, and that the amount he paid was not sufficient to discharge his property from the requirements and condition of the trust deed.   In addition, there was evidence which the chancellor accepted as showing that Reed had been advised and had actual knowledge that he was not entitled to demand or receive a release from the trustee, and that the trustee was without authority to execute a release to him for the amounts he was willing to pay.   Mr. Broomel and Mr. Richards testified, in substance, that they explained to Reed that his contract with Calland did not entitle him to redeem from the trust deed, except under the terms and conditions of that instrument.   The release deed was disaffirmed almost immediately and the money paid by Reed tendered to be returned to him.   The appellee holders of the notes secured by the trust deed refused to receive the money, and it remained in the custody of the Chicago Title and Trust Company subject to the demand of the holder of the mortgaged lots, and was tendered into court with the

480        C. & E. I. R. R. Co. *v.* Huston.        [196 Ill.

bill asking a decree canceling the release deed. The lack of power in the trustee to execute the deed of release fully authorized the chancellor to decree the cancellation thereof.

Whether the equities of the case entitled the appellant to an order directing the sale of the lots belonging to Rundell and the application of the proceeds of such sale to the extinguishment of the decree debt before her lots should be appropriated for that purpose is not raised by the record or suggested by counsel.

The decree is affirmed.

*Decree affirmed.*