13303

HIBBETT v. CHARLESTON HEIGHTS CO. *ET AL.*

(161 S. E., 499)

*Messrs. Julian Mitchell and Ernest L. Visanska,* for appellant,

*Mr. H. L. Erckmann,* for respondent,

December 15, 1931.

The opinion of the Court was delivered by Mr. Justice Bonham.

For the orderly understanding of the matters involved in this appeal, it will be necessary to state, somewhat at length, the issues made by the pleadings.

The appeal is from orders of Judge Mauldin, dated March 9, 1931, overruling a motion of defendants to require the plaintiff to make her complaint more definite and certain by setting up as separate causes of action the cause of action based upon the alleged fraud of H. H. Ficken and the South Carolina Loan & Trust Company. The cause of action for the foreclosure of the mortgage mentioned and described in the complaint, and the cause of action based upon the alleged liability of the Charleston Heights Company, by reason of its alleged assumption of the payment of the indebtedness secured by the said mortgage. This appeal is also from orders of Judge Mauldin overruling the demurrer of the Charleston Heights Company to the complaint, and from an order overruling the demurrer of the Mortgage Loan Company.

It is agreed by counsel that these appeals shall be combined and heard together.

The complaint alleges:

That Charleston Heights Company was, on the 30th of April, 1923, and still is, a corporation created by the laws of South Carolina.

That defendant, the Mortgage Loan Company, is a corporation, and was such on the 24th of January, 1927.

That by deed dated June 30, 1913, John F. Ficken, upon the expressed conditions of $5 and other valuable considerations not named in the deed, conveyed to Union Corpora-

tion, *inter alia*, two certain tracts of land therein described; and that Union Corporation was owned, managed, and controlled by South Carolina Loan & Trust Company; that Union Corporation by deed dated December 26, 1918, for five dollars and other valuable considerations not stated in the deed, conveyed this same property to Security Savings Bank; a fifty cents United States stamp being attached to the deed. That said Security Savings Bank was then a banking corporation controlled and largely owned by H. H. Ficken, the son of John F. Ficken; and that Security Savings Bank was a subsidiary of South Carolina Loan & Trust Company, operated in connection with it in the same building. John F. Ficken was president of South Carolina Loan & Trust Company.

That on November 15, 1924, said Security Savings Bank in consideration of $10, and other valuable considerations not expressed in the deed, conveyed this same property to Dariel Corporation. To this deed were attached $35 each, of Federal and State revenue stamps. That said Dariel Corporation was owned and controlled by said South Carolina Loan & Trust Company; that the consideration of $35,000 represented by the said revenue stamps was a pretensive one, and was never received by said Security Savings Bank, nor was it paid by Dariel Corporation. That on the 15th of November, 1924, Dariel Corporation executed eight bonds in the sum of $5,000 each, payable to bearer, on the first day of December, 1930, with interest from date at seven per cent. per annum payable quarterly; and, to secure the payment of said bonds, on the same day executed and delivered to said South Carolina Loan & Trust Company, trustee, its deed by way of mortgage of the same premises therein before referred to and described in the complaint. That the bonds were turned over by Dariel Corporation to South Carolina Loan & Trust Company, and carried by it as part of its assets. That said property was not worth then, and is not worth now, more than $6,000.

That about November 21, 1925, and prior thereto, South Carolina Loan & Trust Company was the agent of this plaintiff and her mother, and through its officer, H. H. Ficken, handled their financial affairs and invested their money for them. That on or about December 21, 1925, South Carolina Loan & Trust Company, as such agent for plaintiff and her mother, through its officer Henry H. Ficken, invested $5,000 for them and purchased from South Carolina Loan & Trust Company one of these bonds, although it knew that the value of said bond was less than $1,000; nevertheless it received this money from Dariel Corporation, which it owned and controlled, and it thereby represented and guaranteed the validity of said bond and that it was worth the amount paid for it. That neither plaintiff nor her mother knew the value of this mortgaged property, and relied wholly upon the representations of the said bank, and only recently has plaintiff been advised of the true value of the property. That from the time of the sale of the bond till December 1, 1926, South Carolina Loan & Trust Company paid to plaintiff the interest on said bond. In January, 1927, South Carolina Loan & Trust Company was declared insolvent, and a receiver therefor was appointed. By order of the Court, the receiver was authorized to transfer to the Mortgage Loan Company all of the assets of the said South Carolina Loan & Trust Company, including said seven bonds, and the Mortgage Loan Company was made liquidating agent to wind up the affairs of said South Carolina Loan & Trust Company, in place and stead of the receiver. Mrs. Kate L. McDow, the mother of plaintiff, died December 17, 1928, leaving plaintiff as her sole heir and distributee, and sole owner and holder of the bond sold to them as aforesaid; that the investment of the fund and sale of the bond to plaintiff and her mother was a fraud on their rights committed by the bank and its officer; and that neither the said bank, nor its successor, has the right to share equally with plaintiff in the proceeds of the sale of the mortgaged prop-

erty, but that in equity and good conscience the plaintiff should have a lien securing her bond in preference to the lien of the bonds held by the Mortgage Loan Company as successors to South Carolina Loan & Trust Company. That South Carolina Loan & Trust Company resigned March 31, 1927, as trustee of said bonds, and no successor has been appointed. That the condition of the bond has been broken and the bond is past due and there is due on it $5,000 with interest from December 1, 1926. By deed dated November 29, 1924, Dariel Corporation conveyed the said property to Charleston Heights Company subject to said mortgage. That Charleston Heights Company was then a corporation owned and controlled by South Carolina Loan & Trust Company, and assumed by said deed the payment of said mortgage.

The prayer of the complaint is: (1) That the lien of the bond owned by plaintiff be declared to be superior and prior to the liens of the seven bonds secured by the same mortgage and owned by the defendant, the Mortgage Loan Company.

(2) For judgment against the defendant Charleston Heights Company for $5,000 and interest.

(3) For foreclosure of the mortgage and the sale of the mortgaged premises, and the application of the proceeds to the payment of the costs and expenses of the suit, plaintiff's bond and interest, and any surplus to the Mortgage Loan & Trust Company.

In due time after the service of the summons and complaint, defendants served notice of a motion to require plaintiff to make her complaint more definite and certain by setting up as separate causes of action: (1) The cause of action based upon the alleged fraud of H. H. Ficken and South Carolina Loan & Trust Company; (2) the cause of action for the foreclosure of the mortgage mentioned and described in the complaint; (3) the cause of action based upon the alleged assumption of the payment of Charleston

Heights Company of the indebtedness secured by said mortgage.

The motion was refused by Judge Mauldin, who held that there was but one cause of action; one primary right, one primary wrong involved in the case.

Thereupon the defendants each demurred to the complaint, the Charleston Heights Company on the grounds:

1. That several causes of action have been improperly united, in that: (A) One cause of action is based upon the alleged fraud of H. H. Ficken and the South Carolina Loan & Trust Company; (B) one cause of action is for the foreclosure of the mortgage mentioned and described in the complaint; (C) one cause of action is based upon the alleged liability of Charleston Heights Company by reason of its alleged assumption of the payment of the indebtedness secured by the said mortgage.

2. That as to the cause of action seeking to foreclose the mortgage the plaintiff has not the legal capacity to sue, in that the plaintiff has not the legal title to the mortgage.

3. That there is a defect of parties plaintiff and defendant, in that: (A) H. H. Ficken, whose alleged fraud is made the subject of one cause of action, is not a party hereto; (B) no new trustee has been appointed in the place and stead of the South Carolina Loan & Trust Company, resigned, and no such trustee is a party hereto.

4. That as to the cause of action whereby the plaintiff seeks to impose personal liability upon the Charleston Heights Company, the complaint does not state facts sufficient to constitute a cause of action in that it is alleged in Paragraph XXIII thereof that the property described in the complaint was conveyed to the Charleston Heights Company subject to the mortgage therein mentioned.

The demurrer on behalf of the defendant, the Mortgage Loan Company, differs from that of its codefendant only in the fourth paragraph, which in the latter is as follows:

5. That as to the cause of action based upon the alleged fraud of H. H. Ficken and South Carolina Loan & Trust Company, the complaint does not state facts sufficient to constitute a cause of action, in that: (A) It is an attempt to prefer the plaintiff over the depositors and other creditors of the insolvent South Carolina Loan & Trust Company; (B) until the mortgage is foreclosed, and the plaintiff's loss, if any, is established, the plaintiff has no cause of action against the Mortgage Loan Company.

The demurrers were overruled by Judge Mauldin, and defendants have appealed from these orders, and from that overruling the motion to make the complaint more definite and certain.

The exceptions embody substantially the questions made by the motion to make the complaint more definite and certain, and by the demurrers. We shall not discuss them separately, but all issues made by them will be considered and decided.

It is alleged that the Circuit Judge erred in not sustaining the motion to make the complaint more definite and certain by stating the causes of action separately, and that he erred in overruling the demurrer which attacked the complaint on the same grounds. The Circuit Judge correctly held that there was but one cause of action— one primary right, one primary wrong. The primary right, as stated in the complaint, was the right of plaintiff and her mother to have their agent, South Carolina Loan & Trust Company, faithfully to execute the trust reposed in it by them, by safely investing and securing the money intrusted to it for investment. The primary wrong alleged in the complaint is, that South Carolina Loan & Trust Company fraudulently invested $5,000 of the money intrusted to it by the plaintiff and her mother in a bond which it knew was not worth $1,000, and was the beneficiary of its own fraud. It is true that the complaint is voluminous, made so by the necessity of tracing the devious route by which those who

are charged with the fraud traveled before they arrived at the end of the journey. One is reminded of the nursery rhyme, "Here is the house that Jack built, here is the malt that lay in the house that Jack built;" and so on to the end of the rhyme that so engaged the attention of the children of other days, and, it may be, of today. Here is the South Carolina Loan & Trust Company; here is the Security Savings Bank; here is the Union Corporation; here is the Dariel Corporation; here is Charleston Heights Company. Each associated in a more or less degree of business intimacy, and through each one of which corporations the transaction denounced as fraudulent took its circuitous way. But first and last they were parties to one fraudulent act, one primary wrong;—one invasion of plaintiff's primary right. From this fraudulent conduct arises one cause of action.

What constitutes a cause of action? The question is thus answered by Pomeroy's Code Remedies (4th Ed.), § 347: "Every judicial action must involve the following elements; a primary right possessed by plaintiff and a corresponding primary duty devolving upon the defendant; a delict, or wrong, done by defendant which consisted in a breach of such primary right, and duty; a remedial right in favor of plaintiff and a remedial duty resting upon the defendant springing from this delict; and finally the remedy or relief itself."

Analyzed by this definition, the complaint shows: The primary right of plaintiff to have her money safely invested; the primary duty of South Carolina Loan & Trust Company safely to invest it; the delict of the South Carolina Loan & Trust Company in investing plaintiff's money in a bond worth less than its face, by which South Carolina Loan & Trust Company was benefited and plaintiff was injured, which was a breach of plaintiff's primary right, and a breach of the primary duty of the South Carolina Loan & Trust Company. From these conditions spring a remedial right in favor of plaintiff, and a remedial duty resting upon

the South Carolina Loan & Trust Company. It does not alter the legal responsibility because others now stand in the place of South Carolina Loan & Trust Company; they reached that place by successive steps burdened with the primary duty of remedying the wrong done by breach of plaintiff's primary right.

"If the facts alleged show one primary right of plaintiff, and one wrong done by defendant, which involves that right, the plaintiff has stated but a single cause of action, *no matter how many forms, or kinds of relief he may claim that he is entitled to, and may ask to recover; the relief is no part of the cause of action.*" (Italics added.) Pomeroy's Code Remedies, *supra.*

There was no error in holding that there was only one cause of action stated in the complaint.

We find no error in holding that no new trustee was necessary to be appointed in the stead of South Carolina Loan & Trust Company, resigned. The history of the case, as it is contained in the allegations of the complaint, which for the purposes of the demurrer must be taken to be true, shows that South Carolina Loan & Trust Company was, as a matter of fact, the owner of the bonds of which it was appointed trustee by Dariel Corporation; that the title of trustee, as thus used, was a mere camouflage. The bank was a trustee for its own benefit. It also appears by the allegations of the complaint that, by order of the Court, the Mortgage Loan Company now stands in place and stead of the South Carolina Loan & Trust Company, and is the owner of all its assets including the other seven bonds which were issued by the Dariel Corporation, and secured by its mortgage to South Carolina Loan & Trust Company. The trust was a passive one; all the parties necessary to determine the rights of the parties are now before the Court. It would be an idle gesture to go through the form of appointing another trustee.

It is assigned as error that his Honor, the Circuit Judge, should have held that plaintiff has not legal capacity to sue because she has not title to the mortgage which she seeks to foreclose. Who has the title to the mortgage? It was given to South Carolina Loan & Trust Company, trustee, to secure the payment of eight bonds of the nominal value of $5,000 each. That banking corporation is insolvent, is defunct. The Mortgage Loan Company stands in its stead. It holds this mortgage for the security of the bondholders. It is therefore the owner of seven of these bonds for which it gave nothing except the mortgaged real estate, which is worth little more than the value of the bond for which plaintiff paid $5,000. Plaintiff has an equitable interest in that mortgage which entitles her to maintain this action and to demand the foreclosure of it. She is the real party in interest, and, under the provisions of Section 354, Code Civ. Proc., 1922, may maintain this action. The Mortgage Loan Company, the owner of the other seven bonds, can indefinitely delay the foreclosure of this mortgage, if it so desire, if the contention of the defendants be true, it is not to the interest of the Mortgage Loan Company to foreclose. Such a suit by it would disclose that its predecessor, South Carolina Loan & Trust Company, paid not a dollar to Dariel Corporation for the eight bonds of $5,000 each, for which the mortgage was given, except the real estate which already, as a matter of fact, belonged to it. To say that plaintiff may not demand the foreclosure of this mortgage is "to keep the word of promise to the ear and break it to the hope." We think the case of *Carroll v. Still*, 13 S. C., 433, fully sustains the position that despite technicalities the real party in interest may maintain the action.

It is said in *Johnson v. Dawkins*, 20 S. C., 532: "Either the real party in interest or the party with whom a contract is made for another may institute an action on such contract."

It is further alleged as error that the presiding Judge should have held that H. H. Ficken is a necessary party to this action. We are unable to follow or concur in the argument of appellant's attorneys in this regard. It appears throughout the allegations of the complaint (taken to be true by the demurrer) that H. H. Ficken was the officer and agent of South Carolina Loan & Trust Company in the perpetration of the alleged fraud upon plaintiff and her mother. The plaintiff is seeking no personal recovery from H. H. Ficken. He was but the instrument in perpetrating the fraud of which his principal was the beneficiary. Plaintiff is not suing for damages for a tort; she is suing upon an implied contract. H. H. Ficken was not a necessary party to the complaint.

The Charleston Heights Company insists that it was error on the part of the Circuit Judge not to sustain the ground of its demurrer that the allegation of the complaint, to the effect that the property in issue had been conveyed to Charleston Heights Company subject to the mortgage mentioned in the complaint, imposed no personal liability upon the Charleston Heights Company. If it be conceded, as appellants contend, that the mere acceptance of a deed of conveyance of property subject to a mortgage, which contains no convenant for the assumption of the mortgage debt, imposes no personal liability upon the grantee, nevertheless, the Circuit Judge could not have sustained the demurrer on this ground in this case, for the reason that the complaint alleges that the Charleston Heights Company assumed by the deed from Dariel Company to it the payment of said mortgage. The language of the complaint is somewhat ambiguous. If plaintiff intended to say that the mere taking of the deed subject to the mortgage made the company liable for the payment of the mortgage debt, the demurrer was sustained. But the allegation is susceptible of another deduction, viz., that Charleston Heights Company had by the terms of the deed assumed the payment of the

debt. That is what plaintiff alleges. If she fails to prove it, there can be no recovery against this defendant. It must be borne in mind that Charleston Heights Company and Dariel Corporation were subsidiaries of South Carolina Loan & Trust Company, pawns in the game it was playing; no money passed between them as grantor and grantee. For the purpose of the dominant corporation they exchanged situations; for just what purpose does not clearly appear. It is capable of proof that Charleston Heights Company simply took the place of Dariel Corporation and was bound to pay the mortgage debt if the security for its payment furnished by Dariel Corporation in the form of the mortgage of the real estate failed to pay it. Plaintiff had the right to have this matter heard on trial, and it should not summarily be disposed of on demurrer. It may be said that plaintiff is not entitled to judgment against Charleston Heights Company for the full amount of its mortgage debt as against an original debtor. It is sought to hold the company as a grantor. It is true that the prayer of the complaint asks for such judgment. But the body of the complaint makes it evident that if Charleston Heights Company is liable at all, it is liable only to make good any deficiency there may be after applying the proceeds of the sale of the real estate to the mortgage debt. The prayer of the complaint cannot fix the liability of parties to it.

The question which gives most serious concern in this case is whether plaintiff is entitled to preference over the other bondholders secured by the mortgage which secures the payment of the bond held by plaintiff. Appellants seek to hold the issue to one of priority for plaintiff over depositors and general creditors of South Carolina Loan & Trust Company; and they invoke that cardinal rule of equity announced in *Livingstain v. Columbian Banking & Trust Co.*, 77 S. C., 305, 57 S. E., 182, 184, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568, to-wit: "No rule of equity appeals more to the judicial conscience than that which

requires the assets of an insolvent corporation to be distributed ratably among creditors."

There can be no question of the wisdom and righteousness of that utterance; but it is hardly applicable here. It is conceded for the demurrer admits for its purposes the truth of the allegations of the complaint, that the mortgaged premises are not worth more than $6,000, whereas the bonds secured by it, eight in number, amount to $40,000. The depositors and general creditors could, then, have little interest in this property. It is an issue between the bondholders secured by a common mortgage. Ordinarily lien creditors thus secured stand upon an equal footing; but conditions and circumstances may change this rule in its application. We are content to accept the fair and equitable rule stated in 41 Corpus Juris, 507, in this wise: "There is in general no priority between several debts secured by one and the same mortgage * * * *unless one of the creditors can show equities entitling him to a preference over others,* etc." (Italics added).

It is patent in this case that plaintiff has a paramount equity over the other bondholder, who is the Mortgage Loan Company, the successor in title to South Carolina Loan & Trust Company. It can have no higher equity than its predecessor in title, which gave nothing for its bonds other than the mortgaged premises valued at $6,000. These bonds it carried as assets of the pretensive value of $40,000, but which in reality added little or nothing to the assets of the bank above the amount of plaintiff's bond. The plaintiff was the only innocent person connected with this transaction. She alone has paid for a bond in actual cash, and has paid more than its value if it be held to stand on an equality with the holder of the other seven bonds. It would be the culmination of inequity to permit her to be deprived of her money in such circumstances. We think she is entitled to be first paid from the proceeds of sale of the mortgaged property.

342

We do not construe the complaint as seeking to hold the Mortgage Loan Company liable as a guarantor of the bond, as successor in title of South Carolina Loan & Trust Company. We understand the purpose of the allegation that South Carolina Loan & Trust Company had represented and guaranteed the validity of the bond, and that it was worth the amount paid for it, to be to show the fraud of the transaction, a fraud which, if true as pleaded, entitles the plaintiff to the priority which she seeks. No recovery is sought from the Mortgage Loan Company, except and unless there is a deficiency after the application of the proceeds of the sale of the mortgaged property to plaintiff's debt. It was necessary to make the Mortgage Loan Company a party to the action because, as successor of South Carolina Loan & Trust Company it is joint mortgagee with plaintiff in the mortgage securing the eight bonds.

We find no error in the orders of Judge Mauldin denying the motion to make the complaint more definite and certain, and overruling the demurrers of Charleston Heights Company and the Mortgage Loan Company.

The orders are affirmed, and the appeal is dismissed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran did not participate on account of illness.