THE PRUDENCE COMPANY, INC., a New York Corporation, and WARREN CORNER HOLDING COMPANY, a corporation, *et al.,* v. THOMAS E. GARVIN and J. E. LIND, as Trustees, and M. A. SMITH, as Liquidator of the Meyer-Kiser Bank of Miami.

179 So. 127.

Division B.

Opinion Filed April 11, 1936.

On Petition for Reargument January 20, 1937.

On Reargument December 21, 1937.

*Milam, McIlvaine & Milam, and E. T. McIlvaine,* for Appellants;

*Richard H. Hunt* and *Carlos L. Edwards,* and *Geo. H. Salley* for Appellees.

TERRELL, J.—This case grows out of these facts: In July, 1930, Puritan Investment Company, a Florida Corporation, being the owner of thirty parcels of real estate in Dade County, determined to float a first mortgage loan of $1,900,000 for the purpose of "raising funds with which to liquidate certain mortgages encumbering certain of its properties," being among the parcels heretofore referred to. To effectuate this determination it executed a deed of trust dated July 1, 1930, in favor of J. J. Kiser and Ferd B. Meyer as trustees and the bonds were issued and sold to persons and companies in Miami and Indianapolis, including the Meyer-Kiser Bank of Miami.

Among the properties described in the deed of trust dated July 1, 1930, was included what was known as the Palmetto Apartments property which was encumbered by a mortgage dated September 15, 1928, in the sum of $82,500.00. Upon the sale of the bonds secured by the trust deed Puritan Investment Company satisfied of record this mortgage by instrument dated July 1, 1930, but filed August 20, 1930. The trust deed then became a prior encumbrance on the Palmetto Apartments property. Kiser and Meyer were later removed as the trustees named in the

trust deed for breaches of trust and appellees, Thomas E. Garvin and J. E. Lind, were appointed as their successors.

Garvin and Lind, finding that four of the original properties described in the trust deed had been released therefrom by Kiser and Meyer before their removal as trustees and conveyed to appellants without consideration, instituted this suit in the Circuit Court of Dade County to cancel said conveyance and to impress the released lands with the lien of the mortgage and to recover them for the trust fund by placing them in the custody of a receiver previously appointed by the court in a matter ancillary to this.

To the bill of complaint, appellants, Prudence Company, Inc., and Warren Corner Holding Company, a corporation, filed their answer under oath in which they asserted that a valid consideration was paid by them to Kiser and Meyer for the release of said four properties from the deed of trust, that as to three of said properties Prudence Company, Inc., owned first mortgages in its own name, that as to the Palmetto Apartments property during the year 1925 the Prudence Company purchased certain first mortgage bonds which had been issued by one Albert Kotte to J. J. Kiser and Sol Meyer as trustees, secured by a first mortgage or deed of trust, that J. J. Kiser and Sol Meyer continued to act as trustee of the Albert Kotte bonds until 1927 when they brought suit to foreclose them and by the foreclosure decree they came in possession of the Palmetto Apartments property.

At this juncture M. A. Smith as liquidator of the Meyer-Kiser Bank of Miami, having first secured the consent of the court filed, his cross bill to intervene. The cross bill alleges that the liquidator is the holder of 48 bonds purchased under and secured by the Puritan Trust deed, being between two and three per cent of the total issue, that the

properties described in the cross bill were released from the trust deed without the knowledge or consent of the liquidator as owner of said bonds and in fraud of his rights as such therein. It prayed foreclosure of the trust deed as against the property described in the bill of complaint to effectuate the payment of said bonds. It also prayed for the appointment of a receiver to take charge of said property and to collect and impound the rents, issues, and profits to be derived therefrom *pentente lite*.

To the cross bill of Smith as liquidator, Prudence Company, Inc., filed its answer which was substantially the same as its answer to the original bill with the addition that it claimed ownership to $50,000 of unpaid Albert Kotte bonds. The answer further averred that Meyer and Kiser upon purchasing the Palmetto Apartments property at the master's sale in 1928 had no power of authority to convey, transfer, or motrgage the same and that their attempted conveyance "was void or voidable at the instance of the Prudence Company, Inc." and that the effect of said transfer and release was merely to place the Palmetto Apartments property where it rightfully belonged, that is to say it affected the cancellation of a voidable instrument (Puritan Investment Company trust deed) which could have been done by suit in equity.

On the issues made by the cross bill and the answer a master was appointed to take testimony and make report of his findings. Testimony was taken and the master entered a very comprehensive report in which he found for the cross complainant. Exceptionists thereto were filed which after argument and consideration were overruled and a final decree was entered as prayed for in the cross bill. From that final decree the instant appeal was prosecuted.

Appellants and appellees are at variance as to the questions drawn from the pleadings. Appellants urge five questions for adjudication, but on account of the variance of the parties as to what questions are presented we have elected to treat such as we conceive to be presented. All of the facts alleged in the answer and the cross bill are not detailed in this opinion but there appears to be no dispute as to the material ones. The real question presented is whether or not R. A. Smith as liquidator had a right to the relief prayed for in his cross bill.

In a former consideration of the case Prudence Co., Inc., v. Garvin, 118 Fla. 96, 160 So. 7, we were confronted with an appeal from an order appointing a receiver and declined to consider the merits because of the condition of the record. We held that the "answers interposed contained sufficient allegations, which, if proven to be true, were sufficient to constitute a good defense to the allegations both of the bill of complaint and of the cross bill."

The Palmetto Apartments is the only property involved in this litigation, all the other parcels described in the pleadings having been liquidated. Appellant, Prudence Company, Inc., contends that at the time Smith's 48 bonds accrued and before the cross bill was filed it held a fee simple title to the Palmetto Apartments property said title being by deed and release from the Puritan Investment Company mortgage by Kiser and Meyer as the trustees thereof and that said deed and release were known to Smith and his predecessors when his bonds were acquired.

If Smith and his predecessors had been on knowledge of this transaction as Prudence Company, Inc., contends, it would have been a good defense but the record discloses that they were never approached or consulted with reference to it and that the alleged conveyance was not consum-

mated as the trust deed required. Both the master and the chancellor so found and there is evidence to support their findings. The trustees had no authority to execute the release without the consent of the bondholders and it is shown that neither Smith nor his predecessors were approached about the matter.

Not only should the bondholders have been consulted, but Sections One, Two, Three, and Four of the trust deed provide in detail the manner in which releases may be secured from it and the record shows conclusively that these provisions were not complied with. Appellants excuse failure in this by asserting that they gave up a valuable consideration for the releases, such consideration being the cancellation of $90,500.00 of unissued bonds. We find no authority for this and it is shown that the release yielded nothing of value to the bondholders as the trust deed in terms requires.

Appellants were bound as a matter of law to know that a trustee has no authority to deal with a trust estate or to bind the beneficiary, except such as is expressly conferred by the instrument creating the trust or such as is necessarily incident thereto. Weldon v. Tollman, 67 Fed. 986; Connecticut General Life Ins. Co. v. Eldredge, 102 U. S. 545 26 L. E. 245; Tyler v. Herring, 67 Miss. 169, 19 Am. St. Rep. 263; Reed v. Jennings, 196 Ill. 472, 63 N. E. 1005; Hibbett v. Charleston Heights Co., 163 S. C. 327, 161 E. E. 499; Lehman Mfg. Co. v. Jewett, 90 Ind. App. 12, 168, N. E. 46; Geitner v. Jones 176 N. C. 542, 97 S. E. 494.

From the law and the facts as thus detailed there was ample warrant for the chancellor to hold that Smith was a *bona fide* holder of bonds under the trust deed, that in making the conveyance to Prudence Company, Inc., the trustees did not comply with the terms of the trust deed, that

appellants received the property with knowledge of Smith's outstanding claim, that nothing was paid to the trustees for the release of the title, that Puritan Investment Company received nothing for the release and that consequently the claim of appellants was subordinate to Smith's claim under the trust deed.

We have examined appellants' contention to the effect that they have a superior lien against the Palmetto Apartments property to the extent of $27,000 of unpaid bonds because of a fraudulent foreclosure, fraudulent master's sale, and a fraudulent conveyance of the title to said property, but no proof was offered in support of the material allegations supporting said claim neither is it otherwise supported by the record. Appellants were on notice of the alleged fraudulent foreclosure annd master's sale but made no attempt at the time nor afterwards to protect itself until this suit was instituted though years elapsed in which the situation of the parties affected materially changed.

Appellants next contend that they have a right in the Palmetto Apartments property superior to Smith's claim not only by virtue of the deed from Puritan Investment Company and release to it by the Puritan mortgage trustees but by its lien acquired as a result of the foreclosure of the Albert Kotte bonds.

The Albert Kotte Trust deed was foreclosed in 1927 and 1928 and was participated in by appellants. Their asserted lien was consequently discharged and extinguished by the foreclosure. 2 Jones on Mortgages Sec. 1216, 953; Stevens v. Pearson, 202 Ill. App. 22; Hood v. Adams, 124 Mass. 481, 26 Am. Rep. 687; Trimmier v. Vise, 17 S. C. 499, 43 Am. Rep. 624.

It appears that appellants waived their right to bid in the property at this foreclosure and elected to look to its

guarantor for satisfaction of its claim. It now appears that the rights of innocent parties have intervened and they are estopped to assert any claim. Saunders v. Richard, 35 Fla. 28, 16 So. 679; Baillarge v. Clark, 145 Cal. 589, 79 Pac. 268. In view of the lapse of time and the change of circumstances appellants' claim was not only extinguished by foreclosure, but they are now estopped to assert it by reason of laches and because of their election to rely on their guarantor for satisfaction.

The concluding question essential to be adjudicated has reference to the power of the majority bondholders to bind the minority under the circumstances precipitating this cause.

Appellants contend that despite the terms of the trust deed providing for releases a majority of the bondholders can direct the conduct of the trustees as to releases for any portion of the mortgage security upon receipt of the appraised value as provided in the trust deed. Shaw v. Little Rock & Fort Smith Railway Co. 100 U. S. 605, 25 L. Ed. 757, and First Nat'l Bank of Cleveland v. Shedd, 121 U. S. 74, 7 Sup. Ct. 807, 30 L. Ed. 877, are relied on to support this contention.

An examination of these cases discloses that they are in essential respects unlike the case at bar. No provision in the trust deed involved in them provided for reelase but in each case they were accomplished and the reorganization was effected by decree of the court, the object being to preserve and enhance the value of the trust. In the case at bar the trust deed in unequivocal terms carried provisions for releases and when such is the case the parties are bound by them.

The final decree of the chancellor finds ample support in the record and is, therefore, affirmed.

Affirmed.

ELLIS, P. J., and BUFORD J., concur.

WHITFIELD, C. J., and BROWN, and DAVIS, J. J., concur in the opinion and judgment.

## ON PETITION FOR REARGUMENT.
### Division A.

PER CURIAM.—After repeated conference in regard to final disposition of the above entitled cause in this Court, it has been determined by the Court to order a reargument, the reargument to be confined and addressed to the question as to whether or not the title to the property involved in this suit after being conveyed by the Master in Chancery pursuant to sale under foreclosure to J. J. Kiser and Sol Meyer as Trustees, thereafter passed from J. J. Kiser and Sol Meyer as Trustees so as to become vested in the Puritan Company in such manner that the Puritan Company could execute a valid trust deed. to secure its bonds whereby the purchasers of such bonds should be construed to be holders thereof without notice of the claim of The Prudence Company the *cestui que trust* in whose behalf J. J. Kiser and Sol Meyer as trustees foreclosed the trust deed resulting in the sale of the property and the conveyance by the Master to J. J. Kiser and Sol Meyer as Trustees as first herein stated. And upon the further question as to whether or not after the foreclosure of the trust deed executed by Alter Kotte and wife to Sol Meyer and J. J. Kiser as Trustees to enforce the payment of the bonds held by the Prudence Company and the conveyance of the property involved in this suit by the Master in Chancery in that foreclosure suit to J. J. Kiser and Sol Meyer as Trustees, Prudence Company waived its right to rely upon its

security and elected to look for the payment of its bonds to J. J. Kiser and Sol Meyer as guarantors.

The Court will hear argument on these questions on the 9th day of February, 1937, at 9:30 o'clock A. M.

So ordered.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and DAVIS, J. J., concur.

## ON REARGUMENT
### Division A.

A reargument of this case was heard February 9, 1937, by order of the Court limited to the following questions:

"1. . Whether or not the title to the property involved in this suit after being conveyed by the Master in Chancery pursuant to sale under foreclosure to J. J. Kiser and Sol Meyer as Trustees thereafter passed from J. J. Kiser and Sol Meyer as Trustees so as to become vested in the Puritan Company in such manner that the Puritan Company could execute a vaild trust deed to secure its bonds whereby the purchasers of such bonds should be construed to be holders thereof without notice of the claim of the Prudence Company, the *cestui que trust* in whose behalf J. J. Kiser and Sol Meyer as Trustees foreclosed the trust deed resulting in the sale of property and the conveyance by the Master to J. J. Kiser and Sol Meyer as Trustees as first herein stated.

"2. Whether or not after the foreclosure of the trust deed executed by Albert Kotte and wife to Sol Meyer and J. J. Kiser as Trustees to enforce the payment of the bonds held by the Prudence Company and the conveyance of the property involved in this suit by the Master in Chancery in that foreclosure suit to J. J. Kiser and Sol Meyer as Trustees, Prudence Company waived its right to rely upon

its security and elected to look for the payment of its bonds to J. J. Kiser and Sol Meyer as guarantors."

In an opinion filed April 11, 1936, a full statement of the essential facts will be found. These facts will be drawn from as a basis for the present opinion rather than attempting a restatement of them.

The questions as stated are verbose but after argument and a thorough consideration of them in the light of the record, we find no reason to reverse or modify our opinion filed April 11, 1936. Both questions should be answered in the affirmative for the following reasons:

1. The Trustees of the Mortgage securing the Kotte bonds were empowered to purchase at the foreclosure sale the lands securing said bonds in their individual or official capacity. When so purchased, they could sell the said lands and convey a good and indefeasible title in them. Nay Aug Lumber Co. v. Scranton Trust Co., 240 Pa. 500, 87 Atl. 843; Watson v. Scranton Trust Co. 240 Pa. 507, 87 Atl. 845; Smith v. Mass. Mutual Life Ins. Co., 116 Fla. 390, 156 So. 498; 95 A. L. R. 508.

2. The record discloses and it was in effect held by the Chancellor that the Prudence Company waived its right to rely on the Kotte bond security and elected to rely on Meyer-Kiser Corporation of Indiana for security.

3. It was admitted at the oral argument by counsel for appellant that Smith, as liquidator, was a holder for value and in due course of his Puritan Company bonds to the same extent as if they had been purchased and held by the Atlantic National Bank of Jacksonville.

4. Even if Appellants and Appellee Smith could both be classed as innocent parties, Appellants would in equity by reason of their conduct be required to suffer because of their silence when conscience required them to speak.

We do not deem it essential to discuss and cite authorities supporting these reasons. They in part arrive from an interpretation of the evidence and facts as disclosed from the record. We have given the whole case a thorough consideration on reargument and find no reason to recede from our former opinion.

It is accordingly reaffirmed.

ELLIS, C. J., and WHITFIELD, TERRELL and CHAPMAN, J. J., concur.

BROWN, J., concurs in the conclusion.

BUFORD , J., dissents.

BUFORD, J. (dissenting).—In the original opinion filed on April 11th, 1936, there was set forth a statement of the facts out of which this litigation developed.

A rehearing was granted.

I am convinced that the conclusion reached in opinion above referred to is not well founded. The controlling facts, as they appear to me, are as follows:

On June 4, 1926, the Prudence Company purchased $62,500.00 of first mortgage bonds, the payment of which bonds was secured by a trust deed on Palmetto Apartments. These bonds should be referred to as the Kotte bonds. The trust deed was executed by Albert Kotte and wife to Sol Meyer and J. J. Kiser as Trustees. The $62,500.00 of bonds purchased by the Prudence Company constituted all the bonds issued under the trust deed. Meyer-Kiser, a corporation of Indianapolis, Ind., which corporation was owned by Sol Meyer and J. J. Kiser, guaranteed the payment of both principal and interest of the bonds purchased and owned by the Prudence Company. On January 2, 1928, the Prudence Company, at the request of Meyer-Kiser Bank of Miami, Florida, forwarded $50,000

of the issue of $52,500.00 of bonds to the Bank of Bay Biscayne for the purpose of being exhibited in foreclosure proceedings brought by Meyer and Kiser as Trustees to foreclose the Kotte trust fund. At this time $12,500 of the bonds had been paid off and discharged.

On Rule Day in September, 1928, J. J. Kiser and Sol Meyer as Trustees and complainants in the foreclosure suit foreclosing the Kotte trust deed for the Prudence Company, as the Prudence Company was the holder of all the bonds outstanding, the payment of which was secured by that trust deed, bought in the property known as Palmetto Apartments for the sum of $42,000.00 and received a Master's deed from William T. McCaffrey as General Master to J. J. Kiser and Sol Meyer as Trustees, dated August 16, 1928. Under the record this deed vested the title in the Trustees for the use and benefit of the Prudence Company. There has never been a conveyance of the beneficial interest vested thus in the Prudence Company.

The record shows that the bonds secured by the Kotte trust deed were returned to The Prudence Company uncanceled; that no other proceeds of the Master's Sale were paid over to the Prudence Company. It is, therefore, evident that Meyer and Kiser as Trustees in the foreclosure suit brought in the property as Trustees for the Prudence Company and that the Prudence Company bonds was the consideration paid for the property. Neither J. J. Kiser nor Sol Meyer acquired any title as individuals to the property under the Master's Deed, but the only title which they thereby acquired was as Trustees for the Prudence Company, all of which is shown by the record of the original trust deed, the foreclosure suit in the name of the Trustees

and the purchase at the Master's Sale in the name of the Trustees.

It, therefore, follows that the provisions of Section 3793 R. G. S., 5666 C. G. L., cannot be held to apply to the Master's Deed to J. J. Kiser and Sol Meyer so as to vest the fee simple estate with full power and authority in and to the grantees therein named to sell, convey and grant both the legal and beneficial interest in that estate so acquired. It is too well settled to require any citations of authorities that a Trustee once assuming to act in the trust capacity, will be held to continue to act in that trust capacity and he cannot acquire through his action as Trustee a title adverse to his *cestui que* trust. See Smith v. Mass. Mutual Life Ins. Co., 116 Fla. 390, 156 Sou. 498, 95 A. L. R. 508.

On September 25, 1928, Kiser and Meyer as individuals, joined by their wives, respectively, deeded this property to Pan-Palmetto Corporation. This corporation was the creature of, and officered and controlled by, Sol Meyer and J. J. Kiser. The deed did not purport to convey the beneficial interest of the Prudence Company. Thereafter, Pan-Palmetto Corporation executed a trust deed or mortgage to J. J. Kiser and Ferd S. Meyer, purporting to secure a bonded indebtedness of $82,000.00. This was done without any authority whatever from the Prudence Company and the record shows the Prudence Company knew nothing about this transaction until sometime in October, 1932. Pan-Palmetto Corporation was the creature of Meyer and Kiser.

On July 1, 1930, the Pan-Palmetto Corporation mortgage was satisfied of record. On January 28, 1929, Pan-Palmetto Corporation pretended to convey by warranty deed the property involved to Puritan Investment Co. and

July 1, 1930, Puritan Investment Co., made a trust deed to J. J. Kiser and Ferd S. Meyer as Trustees, securing a bond issue in the sum of $1,900,000.00. The Prudence Company knew nothing about either of these transactions.

The following facts are shown: J. J. Kiser and Sol Meyer were the owners of Meyer-Kiser Corporation of Indianapolis, Ind. J. J. Kiser and Sol Meyer were the owners and in management of Meyer-Kiser Bank of Miami. Kiser and Meyer were the Trustees under the trust deed of Pan-Palmetto Corporation. J. J. Kiser and Sol Meyer were the sole owners and officers in active direction of Puritan Investment Co. The officers of Puritan Investment Co. were J. J. Kiser, Sol Meyer and W. C. Chadwick, directors. Sol Meyer was President and W. C. Chadwick was Secretary. Meyer-Kiser Bank of Miami in some way undisclosed by the record acquired 48 of the Puritan Investment Co. bonds. That bank was owned and dominated by J. J. Kiser and Sol Meyer and these bonds were found in the Bank when it was taken over by the Liquidator.

Meyer and Kiser were officers of both the Puritan Investment Co. and Meyer-Kiser Bank of Miami. It, therefore, follows that Meyer-Kiser Bank of Miami acquired no greater rights than Meyer and Kiser acquired under the Master's Deed. The Liquidator of the Bank acquired no better title than the Bank held.

After the foreclosure sale under the Kotte trust deed Meyer and Kiser continued to discharge their guarantee to The Prudence Company by paying off the maturities on the 13th day of January of each year until the 13th of January, 1931, when there was a balance due The Prudence Company of $27,000.00. Thus they lulled the Prudence Company into inaction. When maturities of The Prudence Company were no longer met the Prudence Company became active in the

endeavor to get the money due it and soon thereafter discovered the attempted fraud and demanded restitution of its security.

On October 17, 1932, J. J. Kiser and Ferd S. Meyer released the property involved in this suit from the Puritan Investment Co. mortgage and on the 13th day of October, 1932, Puritan Investment Co. by Ferd S. Meyer, its President, and W. C. Chadwick, its Secretary, conveyed the property to Warran Corner Holding Corporation. This release and conveyance was authorized by corporate resolutions and copies of these resolutions were furnished by Puritan Investment Co. to the Prudence Company. This conveyance was ratified in writing by the holders of 97.86 per cent. of the $1,900.00 Puritan mortgage bonds issued against this and other property. The remaining 2.14 per cent. of such bonds was at the time in the hands of Duncan as Liquidator of Meyer-Kiser Bank of Miami.

Warran Corner Holding Corporation was a corporation created by The Prudence Company for the purpose of taking title to this property on behalf of The Prudence Company and the conveyance was made to Warren Corner Holding Corporation by direction of The Prudence Company.

Again, let it be noted that J. J. Kiser and Sol Meyer were the owners and officers of Puritan Investment Co.

The record shows that at all times Puritan Investment Co., through its officer and director, J. J. Kiser, recognized the interest of the Prudence Company in and to the property here involved. More than two years after the foreclosure of the Kotte trust deed J. J. Kiser wrote The Prudence Company in part as follows:

"The Palmetto Apartments covered by the other Kotte mortgage were rented last year for $7,000. We feel rea-

sonably confident we will be able to rent them for the coming season at around this figure, which will permit the payment of all interest on the loan besides the payment of $1,000 or $2,000 on the principal, or more. Our idea on this is to allow us to refund this with you, making a five year loan with a sinking fund arrangement whereby all net earnings in excess of taxes, operating expenses, upkeep and interest be applied to the reduction of principal. We should be glad to have you advise us in regard to this.

"We think the same arrangement could well be made .on the two Norwood Investment Company loans.

"The only real problem is the $4,000 balance due on the Rifkin loan, known as the Molida Apartments. This property did well two years ago, but had a very poor season last year. We will be glad to continue to operate it for you through the Puritan Investment Company and turn over any income that may be received to the payment of principal and interest, or if you prefer we think we could arrange with the Puritan Investment Company to deed the property to you in satisfaction of your mortgage, which could probably be the most sensible thing to do under the circumstances. Even if we did this we would still be glad to operate it for you, and in this connection we want to again call your attention to the operation of some of the properties you have in Miami which our Mr. F. S. Meyer discussed with you when he was in New York a few weeks ago."

Again, on September 12, 1931, Mr. Kiser wrote The Prudence Company as follows:

"I, of course, realize you do not want to have any more mortgages in default than is necessary, but I assume that any house that holds as many real estate mortgages as you do must necessarily have a considerable amount of them in

default, and the small amount of mortgages herein involved added to others would not make a great deal of difference.

"What we want to do on the mortgages is to cure the defaults as to interest as soon as possible, which we think can be done after the winter season, and make arrangements with you for the extension of principal so that there will then be no default.

"We regret that it will be impossible for us to arrange to give you a deed for any of these except the Rifkin, as stated in our last letter. If you want us to prepare a deed we will be very glad to do so and send it to you.

"It would, of course, be obviously impossible to obtain deeds for the Kotte Linden Apartments mortgage as we do not control this and there is no default on it. The same thing is true of the Bagley Mortgage.

"As to the Kotte Palmetto mortgage, we feel reasonably confident this will, be leased for the coming season at an amount sufficient to pay interest and something on the principal, and we want to arrange an extension on the balance."

And, in the same letter, he said:

"We, of course, understand that the Meyer-Kiser Corporation of Indiana is still responsible on its guarantee on these mortgages and that any refunding arrangements of any kind that are made would not release their guarantee, as we are confident the receiver for this company will join in any necessary papers in connection with these refundings so that their guarantee will not be released."

On November 30, 1931, Puritan Investment Co. by J. J. Kiser, Its Vice-President, advised the Prudence Company as follows:

"We understand you are the holder or guarantor of the

following mortgages at Miami, Florida, title to which real estate is in our name.

"1. (Norwood Investment Company) 1447 S. W. Fifth Street, Miami.

"2. (Norwood Investment Company) 1452 S. W. Fifth Street, Miami.

"3. (Kotte) 1224 Pennsylvania Avenue, Miami Beach.

"4. (Rifkin) 253 N. E. Fourteenth Street, Miami.

"In consideration of your taking no action toward foreclosing the mortgages on the above properties at the present time, we as owner of said property hereby assign to you all rents, income and profit from these properties subject to a prior assignment made by us of the rental, income and profits of all our properties to J. J. Kiser and Ferd S. Meyer, Trustees on account of advancement heretofore made by them.

"We understand that we are to act as your agents in the collection of these rentals, which agency is revocable at your pleasure. All funds collected shall be used to pay operating expenses and taxes only and the balance will be held for your account to be paid you upon your request, subject to the prior assignment above referred to. Any monies so paid you shall be applied on account of interest and principal on the mortgage covering the property affected."

The record not only shows that Puritan Investment Co. at all times recognized the beneficial interest of the Prudence Company in this property, but it also shows that J. J. Kiser and Sol Meyer deliberately withheld from The Prudence Company knowledge of the fact that The Trust deed securing its bonds had been foreclosed and the property sold under decree to Kiser and Meyer as Trustees for The Prudence Company; that on the contrary they procured the

return of the bonds uncancelled to The Prudence Company and thereafter in correspondence with the Prudence Company referred to the matter as it originally stood until the Prudence Company, upon making an independent investigation, discovered the true condition. It was then that the Puritan Investment Company took necessary steps to convey such title as it might have acquired to Warren Corner Holding Corporation, the nominee and *alter ego* of The Prudence Company.

In the making of the release from the mortgage and in the execution and delivery of the conveyance by Puritan Investment Co., it was doing no more than it could and should in equity and good conscience have been compelled to do. See Smith v. Mass. Mutual Life Ins. Co., *supra*.

It is apparent that Meyer and Kiser were fully advised that the attempt which they had made to divest their *cestui que* trust of its interest in the property was abortive and of no force and effect and that as each and every transaction which was consummated after the Master's Sale and deed to Meyer and Kiser as Trustees was consummated between Meyer and Kiser as officers of one corporation, or as individuals, and Meyer and Kiser as officers of *another* corporation, or as individuals and that, therefore, there were no intervening innocent purchasers and that they continued to hold title to the property purchased at the foreclosure sale for the benefit of The Prudence Company and not otherwise, and therefore, they caused the conveyance to the nominee of The Prudence Company to be made for the purpose of avoiding litigation and being required by decree of court to do that which they were bound to do under the principles of law as clearly stated by this Court in the splendid opinion by Mr. Justice Brown in Smith v. Mass. Mutual Life Ins. Co., *supra*.

It is quite true, as is stated in the opinion prepared by Mr. Justice Terrell after re-argument of the case, that the Trustees of the Puritan Investment Company as bond-holders therefor were empowered to purchase at the fore-closure sale the lands securing said bonds in their individual or official capacity. When so purchased, they could sell the said lands and convey a good and indefeasible title in them. But the record shows that Meyer and Kiser elected to and did make the purchase "as Trustees and not as individuals." As Trustees they could have conveyed a good title. Having elected to take title "as Trustees" and having so accepted the title they thereby fixed their character in that regard and a deed from them as individuals was ineffective to convey title divesting The Prudence Company of its beneficial interest.

Aside from this, however, there appears to me to be another reason why the decree should be reversed, even though it should be held that the deed from Meyer and Kiser as individuals was effective to convey the beneficial interest vested in The Prudence Company. As is hereinbefore stated, on October 17, 1932, J. J. Kiser and Ferd S. Meyer released the property involved in this suit from the Puritan Investment Co. mortgage and on the 13th day of October, 1932, Puritan Investment Co. by Ferd S. Meyer, its President, and W. C. Chadwick, its Secretary, conveyed the property to Warren Corner Holding Corporation. This release and conveyance was authorized by corporate resolutions and copies of these resolutions were furnished by Puritan Inevstment Co. to The Prudence Company. This conveyance was ratified in writing by the holders of 97.86 per cent. of the $1,900,000.00 Puritan mortgage bonds issued against this and other property. The remaining

2.14 per cent. of such bonds were at the time in the hands of Duncan as Liquidator of Meyer-Kiser Bank of Miami.

It therefore appears that at most the appellees are entitled to only 2.14 per cent. of the proceeds of a foreclosure sale of the property involved, while Warren Corner Holding Corporation which is shown to be only a conduit to receive assets for the benefit of The Prudence Company, is entitled to receive the balance under subrogation of the rights of the holders of 97.86 per cent. of the bonds who ratified and confirmed the release and conveyance of the property here involved by Puritan Investment Co. to Warran Corner Holding Corporation. Certainly it cannot be reasonably contended that the holder of 2.14 per cent. of the bonds, the payment of which was secured by the mortgage, is entitled to receive any greater portion of the proceeds of the sale of the pledged property under the peculiar facts of this case than such holder would have been entitled to receive if all bondholders had retained such right as they may have originally had to participate in the proceeds. See First National Bank of Cincinnati v. Rudolph B. Flershman, 78 Law. Ed. 465, 290 U. S. 504.

It may be that under other conditions a non-assenting bondholder would profit by the release of security by other bondholders but the factual conditions in this case will not permit such result here. To reach such a conclusion in this case would mean that the chancery court, which is a court of conscience, will lend its hand to aid the wrongdoer. The Liquidator stands in the shoes of Meyer-Kiser Bank of Miami. The officers of that Bank, Sol Meyer and J. J. Kiser, were the dominant parties in all these transactions. As officers of Puritan Investment Co., J. J. Kiser and Ferd S. Meyer issued bonds of Puritan Investment Co. with Sol Meyer and J. J. Kiser as its officers,

Meyer-Kiser Bank of Miami acquired forty-eight of these bonds. As an officer of Puritan Investment Co., J. J. Kiser caused the release and conveyance of certain property which was pledged, validly or not, to secure the payment of that bond issue. As an officer of Puritan Investment Co., he procured the ratification and confirmation of that release and conveyance by holders of 97.86 per cent. of the bonds but withheld ratification and confirmation of such release and conveyance by the Bank which Sol Meyer and J. J. Kiser controlled. It would be unconscionable to allow them to so enhance the value of the bonds held by the Bank under their control.

So, I am of the poinion that the decree appealed from should be reversed and the cause remanded with directions.